MARY L. HAMMOND

v.

GEORGE MELTON, JR.

*Stallion—Injury by—Owner's Liability for—Contributory Negligence —Evidence.*

1. The owner of a stallion or other domestic animal is bound to take notice of the general propensities of the class to which it belongs, and if

Hammond v. Melton.

such propensities are of a nature to cause injury, he must anticipate and use reasonable care to guard against them. He is under no obligation to guard against injuries which he has no reason to expect from the animal, either on account of such propensities in general, or some disposition thereof, of which he has notice.

2. If an animal is disposed to attack mankind and the keeper has notice of the dangerous propensity, the public safety demands that if he keep the animal at all, he shall keep him secure.

3. After notice, the keeper of such animal is responsible for all injuries occasioned by such attacks, and the fact that he endeavors to so keep the animal as to prevent the mischief, will not protect him if he fails. The gist of the action is not the manner of keeping the vicious animal, but the keeping him at all with the knowledge of the vicious propensity.

4. A person exercising ordinary care, injured by an animal on account of negligence of its owner in securing the same, may recover, but in case the animal was vicious and the owner knew it, in order to recover it is not necessary to prove a want of care in methods of stabling or fastening.

5. This court holds as erroneous the admission of certain evidence upon the pretense of impeachment, touching the opinion of a witness that plaintiff did not use ordinary care to avoid injury.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Knox County; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. WILLIAMS, LAWRENCE & BANCROFT, for appellant.

Messrs. J. J. & G. TUNNECLIFFE and J. A. McKENZIE, for appellee.

CARTWRIGHT, J. Appellant sued appellee for injuries to her person from an attack by appellee's stallion. There was a verdict and judgment for appellee. The evidence showed that Mrs. Hammond was driving on the public highway in a covered one horse carriage with her little boy, Harry, her sister, Mrs. Caldwell, and her niece, Mamie Caldwell, when the stallion, running loose in the highway, with only the head-piece of a halter and a piece of broken rope attached, on him, met and passed them, and turning around, came after them. Mrs. Hammond started the mare she was driving into a run, but finding that she would be overtaken, stopped the mare. Mrs. Caldwell jumped out, but her dress caught upon the

buggy step and she fell to the ground. Mrs. Hammond jumped out on the opposite side, while the niece got out between the wheels on the same side as Mrs. Caldwell and loosened the dress, and the little boy was left in the carriage. The stallion passed around Mrs. Caldwell while lying on the ground and rearing up, got his front feet on the mare. Mrs. Hammond and the niece tried to unhitch the mare and get her loose from the buggy and away from it, but did not succeed; Mrs. Hammond threw her shawl in the stallion's face, in an endeavor to drive him away, but he came around the mare walking on his hind feet and pawing and striking out with his front ones. Mrs. Hammond was trying to keep him back and was struck and injured by him. After this the little boy was gotten out of the carriage and they all reached a place of safety. The claim of appellee's liability was based on a charge that he knowingly kept an animal, dangerous when at large, which, when so at large, committed the injury, and also upon a charge that he employed insufficient fastenings and stabling to restrain an animal known to be dangerous when at large, whereby he escaped and did the injury. The question of contributory negligence on the part of Mrs. Hammond was material in the case; William Wetmore was examined as a witness for her, and on cross-examination was required to answer, against objection, whether he had not stated to Milton Tudor that she would not have been hurt if she had acted differently at the time of the injury. Tudor afterward testified, against objection, that Wetmore expressed such an opinion to him. This was error of the most hurtful kind. It was not impeaching evidence, nor did it tend to discredit Wetmore in any particular. It was not a statement of any fact, but an expression of an opinion or conclusion from the facts, and could not be competent evidence in any event. The only effect was to get before the jury, under the pretense of impeachment, the opinion of Wetmore that Mrs. Hammond was not using ordinary care to avoid the injury. The fifth and sixth instructions related to this question of care and negligence. The fifth assumed that she did not exercise ordinary care and should not have been given in that form. The principles of law contained in these instructions are correct.

Turning to the questions affecting the character of the animal and the conduct of Melton, there was evidence tending to prove that the horse had shown a propensity to strike or strike at a person, and that Melton had notice of it, and there was evidence of the manner in which the horse was stabled and fastened upon which the charge of negligence was based. The court gave several instructions, telling the jury in each, in substance, that they must find the defendant not guilty unless they believed from a preponderance of the evidence that defendant was negligent in securing the horse, that he got upon the highway through the negligence of the defendant, that while loose, by reason of defendant's negligence he attacked and injured plaintiff, and that the negligence of defendant must be the want of ordinary care.

The horse being a domestic animal necessary for the use and pleasure of man, the keeping of a stallion is not a wrong in itself, but is proper, and no wrong can come from it unless there is in addition some wrongful conduct. The owner of a domestic animal is bound to take notice of the general propensities of the class to which it belongs, and if such propensities are of a nature to cause injury he must anticipate and guard against them. He necessarily knows that the act will be committed if opportunity offers. So the keeper of a stallion is bound to take notice of the well known propensities of stallions in general, and to use such degree of care as the nature of the animal may reasonably require to avoid injury from such propensities. But he is under no obligation to guard against injuries which he has no reason to expect from the animal either on account of the propensities of stallions in general, or some disposition of the individual animal of which he has notice. If, however, the animal is disposed to attack mankind, and the keeper has notice of the dangerous propensity, the public safety demands that if he keep the animal at all he shall keep him secure. There is no such necessity for keeping exceptionally vicious individuals of a species of animals naturally peaceable, as justifies their being kept upon any other terms. After notice, the keeper of such animal is responsible for all injuries occasioned by such attacks, and the

fact that he endeavors to so keep the animal as to prevent the mischief will not protect him if he fails. The gist of the action is not the manner of keeping the vicious animal, but the keeping him at all with knowledge of the vicious propensity. In the case of Stumps v. Kelley, 22 Ill. 140, it is said that "the principle of responsibility by an owner of an animal accustomed to commit injury to mankind, and knowing its vicious propensity, is imposed for all injuries it may inflict, and is recognized by the divine and civil, as well as the common law." See also Flansburg v. Basin, 3 Ill. App. 531; Wood on Nuisances, Sec. 759. If Mrs. Hammond exercised ordinary care and was injured on account of neglect of Melton in securing his horse she might recover; but if the jury should find that the horse was vicious and that he had notice of it, she might recover without proof of that sort of negligence. In one sense the basis of the action would be negligence, but it is that sort of negligence which consists in knowingly keeping a dangerous animal and not keeping him secure. In such case it is not necessary to prove a want of care in methods of stabling or fastening. Cooley on Torts, page 343; 1 Addison on Torts, Secs. 261, 285; 1 Hilliard on Torts, 569.

The instructions were erroneous. The judgment will be reversed and the cause remanded.

*Reversed and remanded.*