[Civ. No. 4159.  First Appellate District, Division One.—January 27, 1922.]

GEORGE R. DALEY, Respondent, v. I. ISAAC IRWIN, etc., Appellant.

[1] SALES — SEED BARLEY — BREACH OF WARRANTY — KNOWLEDGE OF AGENT OF BUYER—DAMAGES.—Where a ranch owner instructed his foreman to plow and plant to barley a certain acreage and to procure from the defendant from time to time as he needed it recleaned barley for that purpose, the owner, as a matter of law, was charged with the knowledge acquired by the foreman as to the character of the seed supplied, and the damage to the owner from a breach of warranty as to the quality, after knowledge of the foreman, is the difference in value between the seed as warranted and that actually delivered, and not the difference in value between the crop grown from the seed and that which would have been grown had the warranty been complied with.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Reversed.

The facts are stated in the opinion of the court.

J. C. Hizar and Wm. G. Mirow for Appellant.

Charles C. Crouch for Respondent.

KERRIGAN, J.—Action to recover damages for breach of warranty in the sale of barley seed. Plaintiff recovered judgment for the sum of $6,723, which was based upon the difference in value of the crop grown from the seed and that which would have been grown had the warranty been complied with. The defendant appeals.

The facts of the case, either as claimed by the respondent or as established by the uncontradicted evidence, so far as they are necessary to be stated for the purpose of the decision, are as follows: The plaintiff, intending to plant to barley for the purpose of raising a crop of hay, about 900 acres of land situated about eighteen miles from the city of San Diego, called upon the defendant at his place of

1. Warranties and conditions upon sale of seed, nursery stock, etc., notes, 16 A. L. R. 859; Ann. Cas. 1918B, 72, 96.

business in that city. He there saw the defendant's manager, and stated to him that he desired to purchase one thousand sacks of recleaned barley for seed. He was shown barley of this character, and told that it would cost three dollars per ton more than barley of ordinary quality. He was informed that the price would be that prevailing at the time the barley should be called for, and that if he desired any particular lot he would have to have it set aside for him. This the plaintiff declined to do, but stated that the price was satisfactory; that he would send for the barley when needed, and that every time he came into town he would pay for whatever had been supplied in the meantime, which arrangement the defendant stated would be acceptable. Plaintiff then left the establishment of the defendant, having given no order in writing, having paid no part of the price, and having received or accepted no part of the barley, so that it is clear that, under the statute of frauds, the value of 1,000 sacks of barley being admittedly over $200, at this moment no valid or enforceable contract had been entered into. (Code Civ. Proc., sec. 1973, subd. 4; Civ. Code, sec. 1624, subd. 4, sec. 1739.)

Shortly thereafter the plaintiff, having business in the Imperial Valley, went to that region, but before doing so instructed one Valeriano Ramos, who had been working for him for seven years and who acted as foreman over the other employees of the ranch, to plow and plant to barley the said 900 acres, and to procure from the defendant from time to time as he needed it recleaned barley for that purpose. In carrying out these instructions Ramos ordered various lots of recleaned barley from the defendant, sending the plaintiff's teams therefor. Each of said lots was separately billed to the plaintiff at the prevailing (and varying) market price. The barley supplied, although claimed by the defendant to be recleaned, was full of weed seeds, radish seeds, chaff, and trash, which was apparent upon the most casual inspection, notwithstanding which Ramos, with the aid of his workmen, and in spite of their repeated complaints that the operation of the seeders was delayed by the large amount of foreign matter in the seed, proceeded to sow this barley, and continued to do so until the return of the plaintiff to the ranch, who immediately ordered its planting to be discontinued and procured from other sources

the remaining seed necessary to complete the sowing of the ranch.

It is conceded by the respondent (as indeed it must be) that the plaintiff could not enhance his damages arising from the breach of warranty as to the quality of the seed by sowing it, with knowledge of its true character, and charging to the defendant the difference in value between the crop realized and that which would in all probability have been realized had the seed been of the quality sold, but is confined to the difference in value between the seed as warranted and that actually delivered; but, in support of the judgment, it is the contention of the respondent that he was entitled to rely upon the warranty arising from a sale of seed of specified quality or variety, that he had no personal knowledge of the inferior character of the seed actually supplied until after the bulk of it had been sown upon his land, and that he is not chargeable with the knowledge of the true character of the seed possessed by his agent Ramos since, according to the plaintiff, Ramos was a mere menial or farm hand, without authority to represent his employer in the acceptance or rejection of the barley ordered from the defendant. As we have already said, there is no conflict in the evidence of the authority of Ramos in spite of his employer's belated attempt to belittle it.

Under the most favorable view of the case as regards the plaintiff the contract alleged in the complaint only came into existence when the first delivery of the barley was made, the demand for and receipt of which were made by or under the direction of Ramos. At this time the plaintiff had departed from his ranch, and had instructed Ramos to demand from the defendant such quantities of recleaned barley as might be required to sow the 900 acres. On the other hand, if (as seems to us more likely) the transaction with the defendant consisted of a series of purchases, and not of one under a single contract, these purchases were made through Ramos upon his instructions from the plaintiff to procure the necessary quantities of recleaned barley. In either event there was imposed upon Ramos the duty of taking an essential step in the consummation of whatever contract or contracts were entered into between the plaintiff and the defendant. It seems idle to pretend, as seems to be the claim of the respondent, that a person can employ

an agent to do specific things, and, while receiving the benefits of his agency, attempt to escape its burdens by denying that the agent possessed the very authority which it was essential he should have in order properly to perform his duties.

A similar contention to that now advanced by the respondent was made by the defendant in the case of *Barrett v. Metropolitan Contracting Co.,* 172 Cal. 116 [155 Pac. 645]. There the defendant was the owner of horses which it rented out for teaming purposes. It maintained in convenient parts of the city stables where the horses were kept. It had a foreman or overseer of its stables and horses, who frequently made the rounds of the stables, but was not permanently at any one of them. Each stable was in charge of one or more stablemen—"stable-bucks" they are called. Touching the powers and duties of these stable-bucks the uncontradicted evidence in the case showed that they were confined to feeding the animals and at times to hooking them up. One of these horses was rented out, and, being hitched to a wagon, started while the driver was in the act of mounting his seat, with the result that he was thrown under the wheels and injured. Evidence was admitted touching the dangerous character of the horse. This evidence consisted of statements made by other drivers of the horse to one or more of the stable-bucks to the effect that the horse was dangerous and would "kill somebody some day," and was restive and high-spirited and not fitted for the work. The injured driver recovered judgment against the defendant, and one of the contentions made by the latter upon appeal was that these statements as to the dangerous character of the horse were not made to any officer or agent of the company under such circumstances as to carry actual or imputed knowledge to the defendant itself, and the limited duties of the stable-bucks in the matter of the horses were pointed out. In disposing of this contention the supreme court said: "The knowledge of a servant to whom is intrusted the care of an animal is knowledge of the master sufficient to render the latter liable. Bearing in mind that the defendant kept in charge of its stables no responsible person and no person at all other than the stable-bucks, it results that there was no representative of the defendant with whom the drivers could lodge their com-

plaints excepting the stable-bucks themselves. It would be unreasonable to say that these drivers must go in pursuit of some representative of the defendant in higher authority for this purpose. Thus it comes about that under the situation created by the defendant, the stable-bucks were placed sufficiently in charge of the animals to warrant the lodging of complaints with them as representatives of their employer, and knowledge of the complaints thus lodged is imputable to that employer.''

[1] It seems clear to us that in the case at bar the plaintiff, as a matter of law, was charged with the knowledge acquired by Ramos as to the character of the seed supplied by the defendant; and that the instructions of the court to the jury on the question of damages should have excluded all loss arising from the sowing of the barley, and been confined to what the court in its charge termed "general damages," i. e., the excess, if any, of value which the barley would have had if it had complied with the warranty over its actual value. This they did not do, but permitted the jury to find damages based upon the character of the crop resulting from the sowing of the seed. The judgment is, therefore, reversed and the cause remanded for a new trial.

Richards, J., and Tyler, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 27, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.,* was not acting.