[Civ. No. 326.   First Appellate District.—August 17, 1908.]

MARK T. HANEMAN, Respondent, v. WESTERN MEAT
COMPANY, a Corporation, Appellant.

VICIOUS ANIMALS—LIABILITY OF OWNER—GIST OF ACTION.—The gist of
an action against the owner of an alleged vicious horse for injuries
sustained by a kick therefrom is the keeping of the vicious horse
by the defendant with knowledge of its vicious propensity; and it
is of the essence of the plaintiff's case that he shall prove these
matters, and also that he himself was ignorant of its viciousness
until the injury occurred therefrom.

ID.—VERDICT UNSUPPORTED.—Under evidence tending to show a previous
kicking by the horse, under special circumstances, without injury to
anyone, but failing to show the general vicious nature of the horse,
and utterly failing to show any knowledge by the owner of any
acts of viciousness of the horse prior to plaintiff's injury, a verdict
for the plaintiff is without support.

ID.—MASTER AND SERVANT—MASTER NOT AN INSURER AGAINST ACCI-
DENTS—ASSUMPTION OF RISK BY SERVANT.—It appearing that the
relation of master and servant existed between plaintiff and defend-
ant, and that plaintiff used the horse in his employment, and found
him tractable for six weeks, until the injury occurred, the master
was not an insurer against accidents happening to the servant, but
the servant assumed the risk thereof as an incident to his employ-
ment.

APPEAL from a judgment of the Superior Court of Santa
Clara County, and from an order denying a new trial.   M.
H. Hyland, Judge.

The facts are stated in the opinion of the court.

Jesse W. Lilienthal, and Jackson Hatch, for Appellant.

B. A. Herrington, for Respondent.

COOPER, P. J.—This action was brought to recover dam-
ages for injuries received by plaintiff from being kicked by a
horse owned by defendant while plaintiff was in its employ
and driving the horse in connection with such employment.
A verdict was rendered for plaintiff, on which judgment was

entered. This appeal is from the judgment and the order denying defendant's motion for a new trial.

It is alleged that at the time of the injury plaintiff was employed, and for several months prior thereto had been employed, by the defendant to work in and about its meat market in the city of San Jose and vicinity, and to take and deliver meat to defendant's customers; that for such purpose defendant supplied plaintiff with a horse, attached by means of a harness to a meat delivery wagon; that the horse was owned by defendant, and kept for the purpose of drawing the delivery wagon, but that at all times said horse "was vicious of temper, was of a ferocious and vicious disposition, and was of a kicking nature, possessed a habit of kicking and striking at whomsoever approached him or was within reaching distance of him." That the vicious nature of the horse was well known to defendant, and was not known to plaintiff.

If it be conceded that the horse was vicious, yet the gist of the action against defendant was keeping the horse with knowledge by the defendant of his vicious propensity. It is necessary that the evidence be sufficient to sustain the allegations of the complaint as to the vicious character of the horse, the defendant's knowledge thereof, and the plaintiff's ignorance thereof; otherwise the judgment cannot stand. It was incumbent upon the plaintiff to prove these matters, as they are of the essence of his case. The common law makes the owner of vicious domestic animals with notice of their vicious propensities responsible, for the reason that under such circumstances it is the duty of the owner to anticipate that such animals will commit such vicious acts as opportunity offers, and it is the duty of the owner to guard against such acts. It is not claimed that the horse was vicious at the time defendant purchased it, or that the proof shows that its general character was that of being vicious and ferocious. Certain specific acts are relied upon to show that the animal was vicious, which we will notice in detail.

The horse was old. He was purchased by defendant a few months before the injury to plaintiff. At the time of the injury plaintiff had been working for defendant about eight or nine months in different capacities in and about defendant's meat business, and had been driving the horse and delivering meat to defendant's customers for about six weeks. When injured he was driving the horse in his regular employment.

He was twenty-one years of age. One Eddington, a witness called by plaintiff, who had been in the employ of the defendant, testified that some time prior to the time of the accident, he had driven the horse off and on for two or three months; that on one occasion the horse kicked at him; that the horse turned toward him and, ''I pulled his head the other way, and he made a bolt to start the other way. Then I pulled his head still the other way and hit him with the whip, and it' was at that time he kicked up.'' One Spottswood, a witness for plaintiff, testified that the horse kicked once while he was scraping the manure out of the stall from under the horse's feet, but that' he might have touched the horse with his pitchfork. That the horse did not kick directly at witness, but straight out. Another witness for plaintiff, Shannon, testified that he worked for defendant five or six months and drove the horse; that the horse could not be depended on, and that ''if you were not looking and he got a shot at you, he would kick the top of your head off.'' This witness, however, did not tell of any instance of the horse kicking or attempting to injure anyone during the entire time he had been driving him. Plaintiff himself testified that the horse was large and slow, and could not be hurried; that he never had to fasten him when leaving the wagon because the horse would stand. Although defendant had been driving the horse six weeks before he was injured, he never knew of his kicking before; that he never heard of the horse being a kicker until he was kicked by him; that he was working for the defendant with the other employees for six or seven months, and never heard of the horse kicking at anyone or of his being a kicker.

During all this time one Dowdell was the manager of the defendant's business in San Jose, and had charge and supervision thereof. It does not appear that defendant or his manager had any knowledge that the horse had ever kicked at any one. Eddington testified that after the occasion on which he states that the horse kicked at him, upon his return to the house he told about the horse having kicked at him, and that he ''thinks'' that Ziegenfuse and Dowdell were there at the time. Dowdell testified positively that he was not present on such occasion, never heard such statement, and that prior to plaintiff's injury he never heard of the horse kicking anyone. One Ziegenfuse, a witness for plaintiff, testified that he heard Eddington make a remark one morning that the horse had

kicked at him (Eddington), and that plaintiff was present sacking beef not more than three or four feet away when the remark was made, and that plaintiff said to witness, "What do you think of the old horse kicking Billy"? '(meaning Eddington). This statement as to what plaintiff said to Zeigenfuse was not denied or in any way contradicted by plaintiff, and Ziegenfuse was plaintiff's own witness.

The above evidence does not show that the horse was vicious, or that defendant had any knowledge of any act of viciousness on the part of the horse. The fact that the horse had upon one occasion kicked up when Eddington struck him with the whip, and upon another occasion when his foot or leg was probably struck with Spottswood's fork while cleaning the stall, is not sufficient to show that he was vicious, or had a "habit of kicking at whomsoever approached him," as alleged in the complaint. We apprehend that such circumstances might be detailed in the history of the most gentle horse. If the horse was of a vicious nature, and had been in the habit of kicking, it is strange that plaintiff never heard any such thing from his fellow-employees during the several months that he was employed with them in and about the meat market and in connection with the delivery of meats. It is also strange that if such was the natural disposition and character of the horse, that plaintiff continuously drove him for six weeks, and never upon any occasion knew of his kicking until the injury occurred. If the horse was a dangerous horse, it seems reasonable that some one would have informed Dowdell of the fact. If he had a vicious character when defendant purchased him, it seems the fact could have been proven. He was then an old horse, and it does not appear that any person was ever before kicked by him. It has been said, in actions for injuries caused by being bitten by a dog, that every dog is entitled to his first bite before he becomes a biting dog. While it is true that the owner of a vicious animal who knows that such animal is vicious should be held liable to all persons for damages caused by the vicious acts of such animal if the owner allows such persons to be subjected to danger without warning, yet it is not the policy of the law to make the master an insurer against accidents that may happen to an employee in the ordinary course of his employment. The employee assumes the risks that are ordinarily incident to the business in which he is employed. The best trained horse may

for the first time kick or run away. To hold the owner of such animal liable it must be shown that such owner failed in some duty to the party injured. In this case it is not shown that the horse was possessed of any characteristic vice, or that the defendant knew of any such vice.

The judgment and order are reversed.

HALL, J., and KERRIGAN, J.—We concur upon the ground that the evidence does not show knowledge on the part of the defendant of the vicious character of the horse. We are not prepared to say that the evidence is not sufficient to sustain a finding that the horse was in fact vicious.

A petition for a rehearing of this cause was denied by the district court of appeal on September 14, 1908, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 15, 1908.