[L. A. No. 3622. Department Two.—February 15, 1916.]

## J. H. BARRETT, Respondent, v. METROPOLITAN CONTRACTING COMPANY (a Corporation), Appellant.

Personal Injuries—Appeals—Conflict of Evidence.—In an action for damages for personal injuries sustained by the driver of a team, in the employ of a municipality, against the owner of the team who furnished the team to the municipality under a contract for supplying it with teams for street-sprinkling service, caused by a horse's starting suddenly, throwing the driver from the sprinkling wagon and running over his leg, on appeal it must be assumed that the jury accepted the testimony of plaintiff's witnesses as to whether the horse was a dangerous animal, and the verdict will not be disturbed.

Id.—Vicious Animal—Knowledge of Servant Intrusted With Care. The knowledge of a servant intrusted by the master with the care of an animal is knowledge to the master of the character of the animal.

Id.—Information Given to Servant in Charge.—The information given by the drivers of teams to the persons intrusted with the care of the teams by the owners of them, where on the premises there is no other representative of the owner, except that the foreman occasionally visited the premises, is imputable to the owner of the teams.

Id.—Knowledge by Plaintiff Prior to Injury.—In such a case it is essential to a recovery that the plaintiff be ignorant of the viciousness of the animal until the injury has happened.

Id.—Pleading — Appeal — Harmless Error.—When a demurrer to a complaint might possibly have been sustained to compel the plaintiff to plead more specifically, if the defendant was not deceived nor misled at the trial by the imperfections of the pleading, the error will be disregarded on appeal under section 475 of the Code of Civil Procedure and section 4½ of article VI of the constitution.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

J. Vincent Hannon, for Appellant.

R. T. Lightfoot, for Respondent.

HENSHAW, J.—This is an action to recover damages for personal injuries sustained by plaintiff while driving a team furnished to him by defendant under the following circumstances: The city of Los Angeles had entered into a contract with defendant whereby the latter had agreed to furnish suitable horses and their harness and wagons to the city for the purpose of doing its street-sprinkling work. The city was to supply the drivers. The teams and wagons were furnished subject to the approval of the city's inspector or his deputies. "Nothing could leave the yard that was not satisfactory to him." In the performance of this contract defendant maintained, in convenient parts of the city, stables where its horses were kept. Each morning a harnessed team was delivered to each of the city's drivers. Each team was attached to a sprinkling wagon, and with the city's driver in charge went on its way. The defendant had a foreman or overseer of its stables and horses, who frequently made the rounds of the stables, but was not permanently at any one of them. Each stable was in charge of one or more stablemen—"stable-bucks," they are called. Touching the powers and duties of these stable-bucks the uncontradicted evidence is as follows: "The authority of the stable-bucks was simply to feed the animals and at times to hook them up." Upon the day of his injury plaintiff, under the direction of a deputy city inspector, took his team, hitched to a sprinkling wagon, and proceeded about his usual duties. There was assigned to him a particular district. His duties were to fill his wagon at convenient water plugs, sprinkle the streets and reload his wagon from the most accessible plug, and so to continue throughout the day. His team upon this day consisted of a horse and a mule. He had not driven them before. At the time of the accident he had refilled and emptied his wagon some fifteen or eighteen times. He had noticed that the horse was high spirited and restive, and seemed to be disturbed at the noise made by the rushing water at the fire plugs. The horse started much more quickly than did its companion, the mule, and when it started did not wait for the mule, but dragged forward the whole of the load. To mount to the driver's seat one was obliged to climb first upon the hub, then upon the tire, and then upon the step below the seat. When filling the wagon it was usual, and was the habit of plaintiff, to tie the lines securely to the seat. When the lines were

released the restive horse seemed to regard this as its signal to start and "plunged forward." The plaintiff had filled his wagon at one of the fire plugs, had released the lines, the horse had started, when, noticing that the check rein or a line of the mule's harness was out of place over a hame, he stopped his team and dismounted to arrange it. In doing so he left the brake on, dismounting upon the left-hand side with the lines in his hand. He fastened the lines not to the seat, but to the step just above the wheel. He arranged the harness, returned to mount to his seat, was standing on the tire with the loosened reins in his hand, when the horse started, jerked the tire from under his feet, and precipitated him to the ground with the lines in his hands, the wheel passed over his leg and inflicted the injury. He shouted "Whoa!" as he fell off the wheel, but the team did not stop until the wheel had passed over and crushed his foot.

Such is the evidence of the accident. Defendant moved for a nonsuit upon several grounds: That the evidence failed to show that the horse was a dangerous animal, and that it failed to show that if it were in fact a dangerous animal, that defendant had any actual or imputed knowledge of its character. This motion was denied. The same propositions advanced upon the motion are in different form presented on this appeal. Evidence was admitted touching the dangerous character of the horse. This evidence consisted of statements, made by other drivers of the horse to one or more of the stable-bucks, to the effect that the horse was dangerous and would "kill somebody some day," and was restive and high spirited and not fitted for the work. The making of these statements to the stable-bucks was disputed by them, the testimony on behalf of the defendant being that no complaint was ever made about the horse; that it was purchased by the defendant upon the recommendation of the city inspector, after an examination of its qualifications by both of them. But of course for the purposes of this consideration it is necessarily to be concluded that the jury accepted the statements of plaintiff's witnesses. The second proposition advanced by appellant is that even if these statements were made, they were not made to any officer or agent of the company under such circumstances as to carry actual or imputed knowledge to the defendant itself, and herein is pointed out

the limited duties of the stable-bucks in the matter of the horses.

The general question of the responsibility of the owner of a vicious animal for damages by that animal inflicted received some consideration in the case of *Clowdis* v. *Fresno Flume etc. Co.*, 118 Cal. 315, [62 Am. St. Rep. 238, 50 Pac. 373]. It is there said that knowledge by or notice to a servant charged with no duty in the matter of the vicious propensities of an animal is not notice to the master. But, upon the other hand, the knowledge of a servant to whom is intrusted the care of the animal is knowledge of the master sufficient to render the latter liable. Bearing in mind that defendant kept in charge of its stables no responsible person and no person at all other than the stable-bucks, that the foreman simply visited these stables, it results that there was no representative of the defendant with whom the drivers could lodge their complaints or to whom they could give their information excepting the stable-bucks themselves. It would be unreasonable to say that these drivers must go in pursuit of some representative of the defendant in higher authority for this purpose. Thus it comes about that under the situation created by the defendant, the stable-bucks were placed sufficiently in charge of the animals to warrant the lodging of complaints with them as representatives of their employer, and knowledge of the complaints thus lodged is imputable to that employer.

Appellant by demurrer urged the insufficiency of the complaint, in that it charged that "plaintiff had no knowledge as to the viciousness of the said horse at any time prior to attempting to use the same." And again, "that defendant failed to warn the plaintiff before he undertook to use or drive the same." It is argued that this pleading is pregnant with the admission that while not knowing the vicious character of the horse prior to attempting to use him, he did learn of this character after using him and before the injury occurred, and that the allegation that defendant failed to warn the plaintiff before he undertook to use the horse is an admission that defendant did inform the plaintiff at the time he undertook to use the horse. It is unquestionably true, as declared in *Haneman* v. *Western Meat Co.*, 8 Cal. App. 698, [97 Pac. 695], that it is of the essence of the plaintiff's case that he is ignorant of the viciousness of the animal until the

injury has occurred. Undoubtedly, in the respects pointed out, the complaint could have been framed with greater art, and the demurrer to it might well have been sustained to compel the plaintiff to plead more specifically. But the evidence of the plaintiff is that he knew nothing of the horse's vicious propensities until the actual occurrence of the injury. Defendant, therefore, was not deceived nor misled at the trial by these imperfections in the pleading, and under the familiar and oft-cited sections of the code and constitution (Code Civ. Proc., sec. 475; Const., art. VI, sec. 4½), the error will here be disregarded.

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.