[L. A. No. 17277. In Bank.—February 29, 1940.]

MARION R. BARNETT et al., Appellants, v. LA MESA POST No. 282, AMERICAN LEGION DEPARTMENT OF CALIFORNIA (a Corporation), Respondents.

Fenton Garfield, August J. O'Connor and G. J. Hider for Appellants.

Gray, Cary, Ames & Driscoll and W. H. Jennings for Respondents.

EDMONDS, J.—Marion R. Barnett and her young daughter sued to recover damages for personal injuries claimed to have been sustained by them when a pet show was given by the local post of the American Legion at La Mesa. The accident which occasioned the litigation is said to have occurred when they were struck by a horse owned by Fred Slocum and being ridden by Herbert Slocum, who are also named as defendants in the action. At the close of the plain-

tiffs' case the court granted a motion for a nonsuit and thereafter entered a judgment of dismissal.

The facts are practically undisputed. The American Legion Post sponsored a parade as part of the festivities to celebrate the burning of certain bonds which had been issued for local improvements. This parade was formed on the school grounds and included the palomino horse which caused the accident. The mother and daughter were not to participate in the parade but had come on the school grounds with Mrs. Barnett's sister to deliver some caps to the sister's children. Thereafter they remained upon the school grounds viewing the formation of the parade.

The complaint contains two counts. In the first count, respondents are charged with negligence. The second count asserts a cause of action upon the ground that the horse which caused the injuries was a vicious and dangerous animal. The respondents deny these allegations and charge the injured persons with contributory negligence.

The testimony offered on behalf of the appellants shows that at the time of the accident Mrs. Barnett and her daughter were standing from seventy to ninety feet away from where the horses were grouped and were looking in the opposite direction. The palomino horse became uncontrollable, and while "rearing and whirling and backing around", struck them. Mrs. Barnett was rendered unconscious by the impact and her daughter received minor abrasions.

The appellants contend that the evidence which they presented shows that the horse was a vicious and dangerous animal, which characteristics were well known to the respondents, and that the respondents acted negligently in forming the parade. On the other hand, the respondents claim, in support of the nonsuit, that there is not sufficient evidence to support a finding that the horse was or was known to be either dangerous or vicious.

■ Unquestionably the evidence is not sufficient to show either that the horse was a vicious animal or that the respondents knew that he had any bad habits which would make him dangerous to people near by. All of the testimony upon this point concerned the acts of the horse upon the school grounds. One witness, a boy of fifteen years of age and a participant in the parade, testified: "The horse cut up a couple of times before Mrs. Barnett was hurt. One

time he came up in just a little bit of hitting me.'' The young son of the chairman in charge of the parade asserted that for half an hour before the accident the horse kept bolting, circling around, crowhopping, rearing and plunging. Another witness said: ''Well, that horse . . . seemed to be kind of skittish and didn't seem like it was ever around a crowd like that before, and it was jumping around and it wouldn't stand still and just moving all the time side-stepping and kind of jumping and cutting up all the time.'' Several other witnesses testified to the same effect. However, there is no evidence whatever to show that the horse was known to be vicious at any time prior to the parade, and therefore the respondents cannot be held liable for its acts as an animal which should not have been allowed in the parade because of habits which made it dangerous. (*Haneman* v. *Western Meat Co.*, 8 Cal. App. 698 [97 Pac. 695]; *Finney* v. *Curtis*, 78 Cal. 498 [21 Pac. 120]; *Looney* v. *Bingham Dairy*, 70 Utah, 398 [260 Pac. 855].)

But it does not follow that the nonsuit was properly granted upon the second cause of action which is based upon the asserted negligence of the respondents in the supervision and management of the animals exhibited. If the injured persons were invitees the respondents owed them the duty of ordinary care. If they were licensees, the respondents either knew of their presence on the school grounds, or are chargeable with this knowledge under the circumstances shown in the evidence, and are liable for any failure to exercise that same degree of care. (*Hamakawa* v. *Crescent Wharf etc. Co.*, 4 Cal. (2d) 499 [50 Pac. (2d) 803]; *Lindholm* v. *Northwestern Pac. R. R. Co.*, 79 Cal. App. 34 [248 Pac. 1033]; *Lucas* v. *Walker*, 22 Cal. App. 296 [134 Pac. 374].)

The respondents insist that because the actions of the horse which caused the injury were as apparent to bystanders as to the respondents, the appellants may not recover for any injuries sustained by them. This argument is one which might very properly be strongly urged before the trier of fact or in support of a judgment in their favor.

However, a motion for a nonsuit may not be granted except where there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such verdict were given. In considering such a motion the evidence must be viewed most favorably to the plaintiff, with every

legitimate inference drawn in his favor and conflicts disregarded. (*Mitchell Camera Corp.* v. *Fox Film Corp.*, 8 Cal. (2d) 192 [64 Pac. (2d) 946]; *Mairo* v. *Yellow Cab Co.*, 208 Cal. 350 [281 Pac. 66].)

Measured by this rule, the evidence offered by the appellants tends to prove their charge of negligence and would support a verdict and judgment in their favor. They were therefore entitled to a determination by the jury of the issues of fact presented.

The judgment is reversed.

Carter, J., Gibson, J., Curtis, J., and Waste, C. J., concurred.