[Civ. No. 2678.   Fourth Dist.   Mar. 19, 1942.]

HAROLD HEATH, Respondent, v. JACK FRUZIA, Appellant.

Calvin H. Conron, Jr., for Appellant.

West & Vizzard for Respondent.

BARNARD, P. J.—This is an action for damages on account of injuries suffered by the plaintiff as a result of being kicked by a horse owned by the defendant Fruzia. The complaint originally contained two counts, the first based upon the theory that this horse was vicious and dangerous which fact was known to the owner, and the second based upon the theory of negligence on the part of the defendant Mahaffey, who was in direct charge of the animal at the time. The defendant's motion for a nonsuit was granted as to the second cause of action and the matter was submitted to a jury upon the issues raised by the first cause of action and the answer. A verdict was returned in favor of the plaintiff and against the defendant Fruzia and he has appealed from the judgment which followed.

The horse in question was a stallion named "Duke." On this occasion Mahaffey was riding "Duke." Heath was riding another horse, and Fruzia was riding a third horse and leading a mare. They stopped at a crossroad store and ordered coca colas, a bottle being handed to each rider by the storekeeper. Mahaffey had dismounted and was holding "Duke" by the reins, with the reins wrapped around his arm while he was getting the money from his pocket with

which to pay for the drinks. Heath, who had come to the scene after the others were there, at first rode his horse in near to where Mahaffey was standing at "Duke's" head and then backed his horse a few steps and moved around so that his horse was standing at the edge of the traveled portion of the road and parallel with "Duke," but facing in the opposite direction and about 16 feet away from "Duke." While he was in this position and drinking his coca cola, and while Mahaffey was trying to get his money out of his pocket, "Duke" suddenly and without warning whirled around, backed up a few paces and kicked, striking respondent and breaking his leg.

The well-established general rule is that the owner of a dangerous or vicious animal who has knowledge that it is such an animal is liable for any injuries it may inflict upon another unless such other person voluntarily or consciously does something which brings the injury upon himself. In *Opelt* v. *Al. G. Barnes Co.*, 41 Cal. App. 776 [183 Pac. 241], the rule is thus stated:

"The liability of the owner is absolute, in such cases, and he is bound to keep the animal secure, or he must suffer the penalty for his failure to do so, in making compensation for the mischief done, unless it can be shown that the person injured voluntarily, or consciously, did something to bring about the injury. (*Molloy* v. *Starin*, 191 N. Y. 21, [14 Ann. Cas. 57, 16 L. R. A. (N. S.) 445, 83 N. E. 588.].) The gist of the action is not the manner of keeping the vicious animal, but the keeping him at all with knowledge of the vicious propensities. (*Hammond* v. *Melton*, 42 Ill. App. 186.) In such instances the owner is an insurer against the acts of the animal, to one who is injured without fault, and the question of the owner's negligence is not in the case. (*Laverone* v. *Mangianti*, 41 Cal. 138, [10 Am. Rep. 269] ; *Clowdis* v. *Fresno Flume etc. Co.*, 118 Cal. 321, [62 Am. St. Rep. 238, 50 Pac. 373.].)"

The appellant first contends that the evidence is not sufficient to sustain either the implied finding of the jury that "Duke" was a dangerous or vicious animal or the further implied finding that the appellant knew of the vicious or dangerous trait which caused this injury. It appears, without contradiction, that on this occasion "Duke" wheeled around, pulled back and kicked suddenly and without warning. Mahaffey testified that he knew of no provocation to

cause "Duke" to do this, that he was absorbed at the time in getting out his money and "I didn't know that the horse was going to kick." There was evidence that when "Duke" was about a year old a small boy started across a pasture in which "Duke" was confined, on his way to school, and that when he was about 200 yards away "Duke" took after him and knocked him down, breaking his leg. On another occasion, about two years before the time of the trial, while several men were riding along together "Duke," who was then being ridden by the appellant, suddenly reared and struck one of the other riders with one of his front feet, knocking the man half way out of his saddle. At another time, about a year before the trial, while several men, including the respondent and the appellant, were riding together "Duke" suddenly reared and the respondent seeing "Duke's" hoofs over his head "spurred my horse out and he came down on her hips." Shortly before the trial, "Duke" attempted to kick another horse which was being loaded into a two-horse trailer with him. One of appellant's witnesses testified with respect to "Duke," "I don't think he is exactly vicious, but so far as dangerous, I would want to stay out of his way. As far as that goes I wouldn't want to get too close to him." Another of appellant's witnesses testified: "Well, he is not, I don't believe he would hurt any human being but he would kick another horse or fight another horse." Both of these witnesses had seen "Duke" on many occasions.

In view of this evidence it must be held that the question as to whether "Duke" was a vicious or dangerous animal was one of fact for the jury and not one which may here be determined as a matter of law. The evidence, with inferences which might reasonably be drawn therefrom, sufficiently supports the jury's finding in this regard. This being true, it follows that the finding that the appellant had knowledge of "Duke's" vicious or dangerous tendencies is also supported since the appellant was himself present on each of the occasions above referred to with the exception of the one where the boy was attacked in the pasture, and it is admitted that he was informed of that incident a few minutes after it occurred. There is no merit in appellant's contention that in most of the prior incidents referred to "Duke" attacked people or animals by using his front feet rather than by kicking. The question involved is the trait, disposition or char-

acteristics of the animal rather than the exact manner in which previous attacks have been made. All of the attacks had been made without provocation and they were not so dissimilar to the one in question as to be immaterial or without evidentiary value.

The appellant next argues that the evidence conclusively shows that the respondent negligently, voluntarily and consciously placed himself in a position of peril and thus brought about his own injury. It is argued that as an experienced horseman the respondent should have known that any horse might kick sometime, that "the most dangerous place about an animal is to be in the vicinity of its full stretch," and that by stopping the horse he was riding at that particular place the respondent did something which a prudent horseman would not have done and thereby "not only provoked the kicking, but also he made possible its serious consequences." It appears from the evidence that the respondent, after approaching the point where "Duke's" rider was standing, near "Duke's" head, backed his horse away, rode him over to one side where he was parallel to "Duke" but about 16 feet away, and as close to the road as he could get without standing on the traveled portion thereof. He was about twice a horse's length away from "Duke" and it cannot be said as a matter of law that he was then in a place of danger or that he should have anticipated that "Duke" would be so held by his rider as to permit him to wheel over and back up several paces where his heels would be within reach of the respondent. This question was also one of fact for the jury.

Appellant's final contention is that the court erred in giving instructions to the general effect that where an injury is caused by a vicious animal which is known by its owner to be vicious, the owner is liable as an insurer unless the injured person voluntarily or consciously does something to bring about the injury and the question of negligence on the part of the owner is immaterial, and in refusing certain instructions offered by the appellant upon the question of negligence and relating particularly to contributory negligence on the part of the respondent.

The instructions, which were thus given, were in accordance with the general rules applicable in such cases as this, as well established in this state, and it is not contended that these instructions were incorrect in themselves. It is contended, however, that by giving these instructions and by refusing

to give the other instructions relating to negligence on the part of the respondent, the jury was in fact told that the negligence of the respondent had no bearing whatever upon his right to recover in this case, and that this was erroneous. Assuming that the question of respondent's negligence might have had a bearing upon the real question in issue in this connection, as to whether the respondent voluntarily or consciously did something to bring about his injury, and further assuming that there was any evidence of such negligence on the part of the respondent, the contention here made is without merit since the jury was sufficiently instructed in this regard, if any instruction was necessary. The court, at the request of the appellant, gave this instruction:

"Harold Heath, the plaintiff, during the entire period of time involving the accident of which he here complains, was under a duty to exercise that degree of care and prudence which an ordinarily prudent person in his position and with his knowledge would have exercised, and if you find that he did not exercise such care for his own safety and that such failure contributed to the injuries of which he complains, then the defendant is not liable."

And in another instruction, also requested by the appellant, the jury was told:

"If you find from the evidence that at the time of the accident Harold Heath was fully aware of the character of the stallion in question, then in determining whether Heath was at fault you are charged that it is your duty to consider his conduct in the light of that knowledge."

The instructions just quoted not only sufficiently covered all of the matters contained in the refused instructions, but clearly and directly submitted to the jury the very question which the appellant now contends should have been presented to it. Without going into the question raised as to the place of contributory negligence in an action of this kind, as having a possible effect upon the question of whether an injured party has voluntarily or consciously done something to bring about his injury, it clearly appears here that the jury was fully instructed even under the appellant's theory in that regard and no reversible error appears.

In this same connection it is suggested that, at best, these instructions were conflicting in that the jury was told that it was the duty of the respondent to refrain from voluntarily

or consciously doing something to bring about his own injury, and, on the other hand, was told that the respondent should act as an ordinarily prudent person. Not only was any possible conflict introduced at the request of the appellant but it sufficiently appears that these two points of view are merely complementary and not conflicting. The jury was told that the respondent, could not recover if he voluntarily or consciously had done anything to bring about his injury, and then was told that he could not recover if he failed to exercise the care and prudence which an ordinarily prudent person in his position and with his knowledge would have exercised, and if the failure to exercise such ordinary care contributed to his injuries. These were not so inconsistent as to be in any way misleading and any possible error in the latter instruction was in favor of the appellant and, having asked for it, he is in no position to object thereto.

For the reasons given the judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied April 16, 1942, and appellant's petition for a hearing by the Supreme Court was denied May 14, 1942.