[Civ. No. 18309. Second Dist., Div. Two. May 18, 1951.]

DOROTHY RUTH O'BRIEN, a Minor, Respondent, v. GATEWAY STABLES et al., Defendants; LLEWELLYN PHILLIPS, JR., Appellant.

Clifton A. Hix for Appellant.

John A. Shidler for Respondent.

MOORE, P. J.—Respondent recovered judgment against appellant, Llewellyn Phillips, Jr., for his negligence in assigning to, and allowing her to ride, Roxan, knowing (1) the beast to be a blooded and spirited mare and (2) respondent to be an inexperienced rider. She had sued appellant's father who operated the Gateway Stables and his uncle, the animal's owner, but they were both exculpated by the decision. While not disputing the propriety of the amount of the award, appellant demands a reversal on the grounds that (1) neither the findings nor the conclusions justify the judgment and (2) the evidence does not warrant the finding of any negligence on the part of appellant.

Appellant's father, herein referred to as Senior, had been for some years prior to November 30, 1948, owner of Gateway Stables near San Pedro. He boarded the horses of his patrons and kept two horses which he rented as an accommodation to such patrons as were accompanied to the stables by persons who desired to ride. Appellant's uncle, Leslie Phillips, had owned Roxan since she was two years old. While she could boast of some pure blood registered stock, she came from a dam of no pedigree, but better than the ordinary saddle horse. Her disposition was kindly and quiet; and she had never bucked from the time Leslie first saddled and rode her. She had been brought from a 500-acre pasture to Senior's stables three or four weeks prior to the accident of November 28, 1948. She had been at the stables on two prior occasions. Roxan was first bred there in 1945 and her foal was delivered November 11, 1946. In June, 1947, having become separated from her colt, she ran into a truck while attempting to rejoin her progeny.

A few days prior to respondent's last visit to the stables, appellant arranged for her to have dinner at the home of his parents and to go horseback riding. He called for her about 4:30 p. m. at her place of business in San Pedro and drove to the Gateway Stables. His own horse being already under saddle, appellant selected Roxan for respondent as a good horse for her to ride. She looked on as Roxan was saddled

in the barn and anticipated no evil results from the ride. Although appellant had never seen respondent ride, and they had never discussed her riding ability, she told him of one horse that had run away with her.

She mounted Roxan, took the reins and the twain rode out of the stables' yard about a quarter of a mile. Though the mare stepped lively, respondent easily kept her in check. She neither went sideways, nor reared, nor pitched. About a quarter of a mile south they turned back in order to go upon another riding area. After she had trotted on a trail 40 or 50 yards, Roxan began to canter, then galloped for a 100 yards when she turned to the right, then to the left and onto a fence and fell, respondent plunging to the ground at the left of the mare.

Appellant had ridden Roxan; had seen her often. While she stepped high, she was neither wild nor mean. She was neither vicious nor saddle-shy; was easily caught, bridled and saddled; did not bite or kick; had never reared up nor run sideways, had no bad habits; had not been known to pitch; she was not blind and had no defect of vision. She had never broken out of her stall to go with her colt. There was no reason for suspecting difficulty on account of instinctive inhibitions against leaving the stable; she had weaned her first colt and had been in foal two weeks.

Respondent testified that she had ridden a horse before at three different stables, and "I knew how to hold the reins." If the mare "bucked" and "pawed the air," as respondent testified, it was her first performance of the kind which appellant had no reason to anticipate and did not see as he followed. Respondent did not speak of her inexperience to her companion, but mounted the mare unassisted and rode with safety and comfort until the nag was thrilled by a call of the wild.

The court found that Roxan was not unkind, dangerous, or vicious then or before, but "was a normal, riding animal, having the usual energy of a blooded, spirited mare"; that appellant did not know, nor should he have known that the mare was dangerous or had refractory propensities. Since the animal had never indicated to appellant a disposition to pitch, run away, kick, bite, or to indulge in any other equine vice, but had been kind and docile, it cannot be said that he was negligent in permitting respondent to ride her. While her tragical fall and serious injuries are most regrettable, it would be unjustifiable and arbitrary oppression to burden

appellant with the obligation to pay for injuries he had no reason to anticipate, and to cause which he made not the slightest contribution by way of a neglectful act or omission. He was entertaining his friend in a genteel and chivalrous manner. He displayed neither wantonness nor lack of interest in the young lady's welfare, but eagerly attempted to enrich her happiness with a rural ride.

■ From a review of all the decisions of the California appellate courts, it may be announced as the law relating to the liability of the owners of horses that if the owner knowingly keeps a mean or vicious beast, he is liable for injuries to another who has been invited to the premises where the animal is kept, or to a person whom the owner has allowed to use the horse without first having been advised of its vicious proclivities. (See *Baugh* v. *Beatty,* 91 Cal.App.2d 786 [205 P.2d 671]; *Kersten* v. *Young,* 52 Cal.App.2d 1 [125 P.2d 501]; *Heath* v. *Fruzia,* 50 Cal.App.2d 598 [123 P.2d 560]; *Finney* v. *Curtis,* 78 Cal. 498 [21 P. 120].) ■ But the owner of a horse is not liable for injuries caused to another while riding or driving the animal with the owner's permission if the latter has no knowledge of his animal's untrustworthiness, or if the user knows of the latter's vices. (*Hackelberry* v. *Sherlock Land & Cattle Co.,* 39 Cal.App. 764 [180 P. 37]; *Haneman* v. *Western Meat Co.,* 8 Cal.App. 698 [97 P. 695]; *Whalen* v. *Streshley,* 205 Cal. 78 [269 P. 928, 60 A.L.R. 445].)

The order denying the motion for a new trial being non-appealable, the appeal is dismissed. The judgment is reversed.

McComb, J., and Wilson, J., concurred.