[Civ. No. 8804. Third Dist. May 11, 1956.]

JASON MANN, Appellant, v. N. S. STANLEY et al.,
Respondents.

Lovett K. Fraser and Bruce B. Bruchler for Appellant.

Phil N. Crawford for Respondents.

SCHOTTKY, J.—Plaintiff commenced an action against defendants to recover damages for injuries resulting from his being gored and trampled by a bull belonging to defendants. He alleged that the bull was a vicious and dangerous animal and that these propensities were known to defendants but that they failed to properly control the bull. The defendants denied the material allegations of the complaint and also pleaded as a separate defense that the injuries to plaintiff were the result of his own carelessness and negligence. The case was tried by the court without a jury and the court rendered judgment in favor of defendants. Plaintiff's motion for a new trial was denied and plaintiff has appealed from the judgment.

Plaintiff makes a number of contentions, the principal of which is that the judgment is contrary to the evidence and the law. Before discussing these contentions we shall summarize briefly the factual situation as it appears from the record.

440

Plaintiff was the owner of a farm near Upper Lake on the 11th of July, 1952, the date on which he was attacked and injured, and had thereon some milk cows besides other livestock. His experience in handling livestock, including bulls, dated back over many years. The defendants were neighbors who owned a Shorthorn Red Durham pedigreed bull four years of age which was used for breeding purposes. On the date in question, in response to a telephone call from plaintiff, the defendant N. S. Stanley, now deceased, delivered the bull to the premises of plaintiff in a specially built trailer attached to a pickup truck. Coincident with his arrival the nephew of plaintiff's wife, Barry Patton, under the direction of plaintiff, opened the gate of the corral of the stock barn and turned one of the cows out into the open pasture land near the vegetable garden on the premises. The tail gate of the trailer was lowered, the bull released from the stanchion by which he was held, and backed out onto the ground near the cow. After the lapse of a period of time, Barry Patton, under plaintiff's direction, turned another cow out of the corral. The two cows remained in the area east of the garden which consisted of an enclosure approximately 165 feet square. The bull in the meantime had wandered to the west side of the garden. After the second cow was turned out N. S. Stanley and Barry Patton moved around toward where the cows were grazing on the east side of the garden. Plaintiff went in the opposite direction toward the bull and started driving him around the north side of the garden toward the cows. When the bull reached the stock barn directly across a driveway from the garden on the north side he suddenly stopped and began pawing the earth, and without warning wheeled and charged plaintiff, goring him in the right arm, knocking him down and trampling him. The injuries sustained were severe. Other evidence will be referred to hereinafter.

Appellant first contends that a bull is a dangerous animal and that it was negligence on the part of defendants not to have proper means of control over him at all times when hired out for services. He contends also that it is the duty of the owner of such bull to use the utmost care to control the bull so he will not injure anyone. We believe that these contentions are adequately and correctly answered as to the facts and the law by the memorandum opinion filed by the trial court. ■ We quote from said opinion as follows:

"By proceeding upon the theory that the bull was vicious

and that the defendants knew that he was vicious and dangerous, plaintiff has assumed the burden of proving not one, but both, of these facts by a preponderance of the evidence. As is said in *Baker* v. *Borello,* 136 Cal. 160, 163 [68 P. 591], 'The law governing such actions is quite fully stated in the opinion of Mr. Justice Henshaw in *Clowdis* v. *Fresno Flume etc. Co.,* 118 Cal. 315 [50 P. 373, 62 Am.St.Rep. 238] . . .' where in the latter case at page 320 it is said that: 'It is well settled in cases such as this (the case involved a bull) that the owner of an animal, not naturally vicious, is not liable for an injury done by it, unless two propositions are established: 1. That the animal in fact was vicious, and 2. That the owner knew it. (*Finney* v. *Curtis,* 78 Cal. 498 [21 P. 120].) Thus, if an animal theretofore of peaceable disposition, while in charge of the master or of a servant, suddenly and unexpectedly, either through fear or rage, inflicts injury, neither is responsible, if at the time he was in the exercise of due care. But, conversely, the owner of such an animal knowing its vicious propensities is liable for injury inflicted by it upon property or upon the person of one who is free from fault.' And as is said in *Barrett* v. *Metropolitan Contracting Co.,* 172 Cal. 116, 119 [155 P. 645], 'It is unquestionably true, as declared in *Haneman* v. *Western Meat Co.,* 8 Cal.App. 698 [97 P. 695], that it is of the essence of the plaintiff's case that he is ignorant of the viciousness of the animal until the injury has occurred.' ▪ In order to recover, the plaintiff must himself be ignorant of any vicious trait on the part of the animal.

▪ "If, as is argued by counsel for plaintiff, all bulls are inherently vicious and dangerous and that these characteristics are, or should be, known to all persons handling them, then plaintiff must be charged with this knowledge. He testified to having been engaged in the farming business practically all of his life with considerable experience in handling cattle including bulls. If the theory contended for were to be applied, the plaintiff and the defendants would stand equal in respect to knowledge of the vicious characteristics and as if the plaintiff had been warned by the defendants, and when he voluntarily left his position of safety at the truck and trailer to drive the bull around the garden to the cows, it must be held that he assumed the risk charged with full knowledge of the claimed danger. ▪ So in this class of cases the courts have adopted the rule expressed in *Clowdis* v. *Fresno Flume etc. Co., supra,* page 320, that, '. . . if an

animal theretofore of peaceable disposition, while in charge of the master or of a servant, suddenly and unexpectedly, either through fear or rage, inflicts injury, neither is responsible if at the time he was in the exercise of due care.'

''What constitutes due care depends upon the circumstances of the case. Here the bull and the two cows were free in an open place selected by the plaintiff, such selection presumably being based on his experience in handling livestock. All parties were at a position of safety near the trailer. The cattle were to themselves. Plaintiff elected to leave the trailer and to start the bull around the garden. With a peaceable animal there was nothing out of the ordinary in this procedure nor anything which would require remonstrance on the part of the owner or any warning by him.

''On the other hand if the bull was vicious, and the owner knew it, a duty rested upon him to warn the plaintiff and forbid his action. But as it was, all persons present accepted the bull as peaceable, and impliedly, if not expressly, accepted all measures taken as adequate under the circumstances. The plaintiff prepared and offered the breeding ground and the owner of the bull accepted it as adequate.

''We are thus brought to a consideration of the characteristics of the bull, and a knowledge by the owners, of his vicious propensities, if any. The facts admit of no dispute as to his domestic character, and conclude any argument that he was a wild or range bull. He was purchased as a calf and for six months remained with a neighbor's herd of milk cows. When about a year and half old he was broken to enter and ride in the trailer. This training was accomplished without the exercise of any undue force or persuasion on the part of his owners. After having been taught to enter the trailer and up to the time of the incident in question he had been taken around the community some 580 times for breeding purposes with no exhibition of viciousness. On at least three previous occasions he was on the premises of the plaintiff where presumably the same procedure was followed as was done in the present case. On none of the 580 occasions did the bull exhibit any vicious traits or dangerous propensities.

''Further proof of the domestic character of the animal is found in the fact that he was handled by all members of the family including Mrs. Stanley. On two different occasions she loaded him onto the trailer and transported him to different farms and returned him after his use. Children

and boys of high school age also herded and fed him. The fact that he was transported on some 580 different occasions by different individuals to different premises with no untoward incident ever occurring speaks strongly for his peaceable character.

"It is true that Mr. Compton and Mr. Lindeblad both witnessed the bull pawing the ground on the Stanley premises on two different occasions. But in each instance he made no offer to attack either of them and went on about his own business when driven away. This evidence supports his tractable character. Nor does the fact that he rubbed his head on the fence when Mr. Lindeblad was in a neighboring field establish a vicious characteristic. But whatever may be the import of these facts the record does not disclose that any of them came within the knowledge of the owners.

"Where one person is to be held as an insurer of the safety of another all of the elements necessary to make out a case should be established by clear and convincing proof. The evidence produced by the plaintiff of viciousness on the part of the bull is doubtful, and *there is no evidence* that the defendants ever knew of the bull's demonstrations before the witnesses Compton and Lindeblad. Proof of knowledge on their part of these demonstrations is absolutely lacking. As Jack Stanley testified the bull sometimes acted like a bull but nothing more. His mother handled him with facility as did children about the place.

"In the case of *Looney* v. *Bingham Dairy,* 70 Utah 398 [260 P. 855], where a child was kicked by a loose horse, the Supreme Court of Utah said: 'We are of the opinion that before plaintiff is entitled to recover a judgment against defendants, under the facts and circumstances of this case, it is necessary for the jury to find, among other facts, that the horse in question was of a vicious or dangerous disposition, and that the defendants, or one of them, knew of such fact or had seen or heard of facts sufficient to convince a person of ordinary prudence of the animal's vicious disposition, before the injury occurred.' It cannot be questioned that this is also the rule in California for the Supreme Court of this State has cited *Looney* v. *Bingham Dairy* in holding that a person injured by a horse acting up in a parade cannot recover unless the horse was known to be vicious, the Court saying in *Barnett* v. *La Mesa Post No. 282,* 15 Cal.2d 191, 194 [99 P.2d 650], that, '. . . there is no evidence whatever to show that the horse was known to be vicious at any time prior to the parade, and

therefore the respondents cannot be held liable for its acts as an animal which should not have been allowed in the parade because of habits, which made it dangerous.' And in *Haneman* v. *Western Meat Co.*, 8 Cal.App. 698 [97 P. 695], in which a hearing was denied by the Supreme Court it is stated in the main opinion by Cooper, page 702: 'In this case it is not shown that the horse was possessed of any characteristic vice, or that the defendant knew of any such vice.' Justices Hall and Kerrigan concurring said: 'We concur upon the ground that the evidence does not show knowledge on the part of the defendant of the vicious character of the horse.' And in *Finney* v. *Curtis*, 78 Cal. 498, 502 [21 P. 120], it is said that, 'The mere fact that the horse became unmanageable on the occasion of the injury does not show that he was vicious or generally unsafe, . . . .'

"These cases are analogous to the case at bar in that they are all based upon an alleged vicious propensity of an animal known to the owner or keeper. The authorities cited by the plaintiff deal with warranties that the animal hired was safe for the purpose for which it was hired. No issue is made here as to the safety of the bull for breeding purposes and hence no warranties are involved. Furthermore, he was not given into the custody or control of the plaintiff. The facts here bear such a great similarity to those in *Looney* v. *Bingham Dairy* where a child was injured by a horse which was loose, as was the bull in this case, that the rule there stated and as announced in *Clowdis* v. *Fresno Flume etc. Co.*, *supra*, must be applied and which is that '. . . if an animal theretofore of a peaceable disposition, while in charge of the master or of a servant, suddenly and unexpectedly, either through fear or rage, inflicts injury, neither is responsible, if at the time he was in the exercise of due care.' As the Court in denying relief aptly stated in *Finney* v. *Curtis*, page 502, 'It does not appear that the injury resulted from the negligence of either the plaintiff or the defendant.' "

Plaintiff attacks various findings of the trial court, but his argument is merely one as to the weight of conflicting evidence. There is ample evidence to support the finding that defendants were not negligent and there is likewise ample evidence to support a finding that plaintiff was contributorily negligent. Issues of fact must be determined by the trial court and an appellate tribunal is bound by the familiar rule that before it can be justified in reversing a judgment upon the ground of the insufficiency of the evidence, it must appear from the

record that, accepting the full force of the evidence, together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, and excluding all evidence in conflict therewith, it still appears that the law precludes such party from recovering a judgment. If the judgment had been in favor of appellant his argument would be very helpful in pointing out evidence supporting such a judgment, but in view of the adverse judgment the testimony pointed out and relied upon by appellant merely accentuates the conflict in the testimony, which conflict it was the function of the trial court to resolve. The trial court, first in its findings and judgment, and again in denying appellant's motion for a new trial, resolved this conflict against appellant, and these findings, based as they are upon conflicting evidence, are binding upon us.

Plaintiff contends also that the court erred in denying his motion for a new trial. In support of his motion, plaintiff filed an affidavit of Evelyn Wattenburger to the effect that she had known the bull to be dangerous and indicating that defendants knew it, and detailing some of the bull's actions. A counteraffidavit by defendants admitted some of the bull's actions, but denied that it showed any vicious tendencies.

The determination of a motion for a new trial is a matter largely within the discretion of the trial court. It was for the trial court to decide whether or not the affidavit filed by plaintiff entitled plaintiff to a new trial. We cannot say upon the record here that the court abused its discretion in denying the motion.

No other points raised require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 5, 1956.