[Civ. No. 18457.    First Dist., Div. One.    Dec. 21, 1959.]

ALEXANDER A. TALIZIN, Respondent, v. OAK CREEK RIDING CLUB (a Fictitious Name) et al., Appellants.

Robert H. Kroninger and Harold A. Galloway for Appellants.

Jarvis, Miller & Decker for Respondent.

DUNIWAY, J.—Plaintiff recovered a judgment in this action for personal injuries caused by his being struck and knocked down by a horse. The horse was in the possession and control of the defendants, and, at the time of the accident, was participating in a jumping exhibition at the St. Francis Riding Club in San Francisco and ridden by a young lady named Inez Thompson. When part way round the ring, it departed on a frolic of its own and instead of taking the jump with which it was confronted, turned suddenly, jumped over the gate leading into the ring, and struck the plaintiff on the chest with its hoofs. Plaintiff was standing just outside the gate, watching the show.

Defendants appeal, contending that the findings are in certain respects unsupported by the evidence and do not sustain the judgment.

The court found "that by the exercise of reasonable care they [the defendants] could have ascertained the fact that said horse 'Peek-a-Boo' was possessed of vicious propensities, to wit: when shown in an exhibition ring as a jumper, to become unmanageable, uncontrollable, to bolt, and to jump out of the exhibition ring endangering spectators. That said defendants failed to exercise reasonable care to ascertain and inform themselves of the said habits and disposition of said

horse.'' The court also found that the propensities of the horse above described ''could have been ascertained by defendants ... in the exercise of reasonable care,'' but that ''it is not true that defendants ... knew that the horse Peek-a-Boo, was possessed of vicious, dangerous, unmanageable and uncontrollable propensities.'' It was also directly found that the horse did have the vicious propensity described above.

The court also found that ''the defendants carelessly and negligently permitted Inez Thompson to ride the said Peek-a-Boo'' at the time and place in question, but that ''it is untrue that said defendants knew or should have known that said Inez Thompson was an unskilled rider. It is not true that said Inez Thompson was an unskilled rider.'' The court further found that the injuries of the plaintiff were the direct and proximate result of the defendants' negligence.

The foregoing findings relate to an amended complaint which purported to state three causes of action. The first two, however, were identical except that in one it was alleged that the defendants were the owners of the horse, and in the other it was alleged that the horse was owned by one Elizabeth Ireland, and that the defendants were authorized by her to board and keep the horse, and to ride and show it at public exhibitions. The court found in accordance with this cause of action. In each of these two counts it was alleged that the horse had a vicious propensity which was known to the defendants. In the third cause of action, the vicious propensity, and the defendants' knowledge thereof, were realleged and it was further alleged that the defendants negligently permitted one Inez Thompson to ride the horse at the time and place in question ''though the defendants knew or should have known that the said Inez Thompson was an unskilled rider, incapable or [sic] riding, managing, and controlling'' the horse.

The appealing defendants contend that the evidence does not support the finding that the horse had a vicious propensity and does not support the finding that the defendants could have ascertained the facts as to the propensity by the exercise of reasonable care.

The court found that the ''special defenses, including those of contributory negligence and assumption of risk are untrue.'' This finding is also attacked by the defendants. These are affirmative defenses and must be pleaded. They were pleaded in an answer to the original complaint, but an amended complaint was filed and answered and they are not set up in the answer to the amended complaint. We might

434

therefore be justified in disregarding them on this appeal. However, the case seems to have been tried upon the assumption that these two defenses were properly pleaded and we will consider the defendants' contentions in regard to them. (See *Gray* v. *Hall*, 203 Cal. 306 [265 P. 246].)

*Are the findings supported by the evidence? Our answer to this question is yes.*

In considering this question, we must follow the rule that we are ''bound by the decision of the trial court if there is any substantial evidence'' to support the finding and must accept ''the full force of the evidence adduced, together with every inference favorable to the prevailing party that may be drawn therefrom, and excluding all evidence in conflict therewith.'' (4 Cal.Jur.2d, Appeal and Error, § 606, pp. 485-487.)

The evidence shows that the horse ''Peek-a-Boo,'' which was owned by Mrs. Ireland, was boarded by her with the defendants at their Oakland stable on October 11, 1952. The arrangement was that the defendants were to board the horse and in return for doing so they could use and show the horse, which they proceeded to do. On October 19, 1952, the defendants entered the horse in a jumping exhibition at Mills College. It was ridden by Inez Thompson, the same rider who rode the horse at the time of the accident. On that occasion, before completing all of the jumps that he was supposed to make, Peek-a-Boo also jumped out of the ring into an area where spectators could stand, although no one was injured. There was testimony by an expert witness called by the plaintiff that a horse that has once defied its rider and jumped out of the ring is going to try it again, and must have special training to prevent its doing so. The defendant Harry Totten testified that he made no inquiries at all about the horse. He was told by Mrs. Ireland that he was a good jumper and that ''she had showed him.'' He also testified that he had little to do with horses going to shows, that his wife, defendant Ethel Totten, did that. He had no discussion about the horse or its qualities with her. The horse was not given any special training by the defendants after the Mills College incident of October 19th and before it was entered in the show at the St. Francis Riding Club on November 15, 1952. The defendant Ethel Totten did not testify, and no explanation was offered as to why she did not testify. It can thus be inferred that her testimony would not have been favorable to the defense. (Code Civ. Proc., § 1963, subd. 5; *Humiston* v. *Hook*, 86 Cal.App.2d 101, 106 [194 P.2d 122].)

We think that the foregoing evidence sustains the finding as to the vicious propensity of the horse. ■■■ It is not the law that a vicious propensity means only the type of malignancy exhibited by a biting dog, that is, a propensity to attack human beings. Any propensity on the part of a domestic animal, which is likely to cause injury to human beings under the circumstances in which the party controlling the animal places him, is a dangerous or vicious propensity within the meaning of the law. (*Hillman* v. *Garcia-Ruby,* 44 Cal.2d 625 [283 P.2d 1033] [dog having a propensity to jump on people] ; *Palmquist* v. *Mercer,* 43 Cal.2d 92 [272 P.2d 26] [horse having a tendency or propensity to bolt with his rider] ; *Barrett* v. *Metropolitan Contracting Co.,* 172 Cal. 116 [155 P. 645] [horse dangerous, high spirited, inclined to run away] ; *Heath* v. *Fruzia,* 50 Cal.App.2d 598 [123 P.2d 560] [horse kicked another horse ridden by plaintiff] ; *Fererira* v. *Silvey,* 38 Cal. App. 346 [176 P. 371] [high strung mule, likely to run away].) It seems that the apparently contrary view expressed in *Malcolm* v. *Tevis,* 110 Cal.App. 76 [293 P. 640], is not good law. In any event, what was there said was dictum, as the sole ground for plaintiff's complaint in that case was negligence on the part of the keeper of a horse.

■■■ The evidence recited also supports the finding that the defendants in the exercise of reasonable care could have ascertained that the horse had the propensity described, and negligently failed to do so. It affirmatively shows that they did nothing whatever to find out whether the horse had this or any other vicious propensity even though they knew that the horse had jumped out of the ring at the Mills College show only a short time before the incident at the St. Francis Riding Club.

■■■ We also are of the opinion that the finding that defendants were negligent in permitting the horse to be ridden in the show at the St. Francis Riding Club is supported by the evidence, although the court also found that the horse was ridden by a skilled rider. The testimony indicates that a horse having a propensity or tendency to jump out of the ring, as "Peek-a-Boo" did, can do so in spite of the efforts of a skilled rider. The defendant Harry Totten testified that he had been in the horse business all his life. The court could, therefore, infer that he knew that this was the case, and the same inference is applicable to his wife who did not testify. In these circumstances, we cannot say that the court was not

correct in finding that it was negligent of the Tottens to permit the horse to be entered in the show, knowing what they did know, and having failed either to investigate the horse further or to school him so as to prevent or eliminate the propensity that he had exhibited.

■ With regard to the defenses of contributory negligence and assumption of risk, both of which the court found to be "untrue," the evidence shows that the plaintiff was a groom at the St. Francis Riding Club, had been an officer in the Russian cavalry, and had to do with and had ridden horses all his life. He was standing, along with a number of other people, just outside the gate leading into the ring of the St. Francis Riding Club and watching the exhibition. There was evidence offered by the defendants that there were signs on the gate and elsewhere warning people not to stand where the plaintiff stood and there were requests over the loud speaker that persons should clear the entrance to the ring. This testimony was flatly contradicted by the plaintiff and we must assume that the court accepted his testimony. There was no evidence indicating that plaintiff knew or had reason to believe that the horse might jump the gate where he was standing. There were a number of other people, some of whom testified at the trial, and who were familiar with horses, standing in the same area as the plaintiff. ■ As was stated by the court in *Mann* v. *Stanley,* 141 Cal.App.2d 438 [296 P.2d 921], at p. 445 : "If the judgment had been in favor of appellant his argument would be very helpful in pointing out evidence supporting such a judgment, but in view of the adverse judgment the testimony pointed out and relied upon by appellant merely accentuates the conflict in the testimony, which conflict it was the function of the trial court to resolve. The trial court, first in its findings and judgment, and again in denying appellant's motion for a new trial, resolved this conflict against appellant, and these findings, based as they are upon conflicting evidence, are binding upon us." (See also *Smythe* v. *Schacht,* 93 Cal.App.2d 315, 321-323 [209 P.2d 114] ; *Frederickson* v. *Kepner,* 82 Cal.App.2d 905 [187 P.2d 800], at pp. 909-910 ; *Heath* v. *Fruzia, supra,* 50 Cal.App.2d 598, 602.)

■ Assumption of risk applies only where the plaintiff knows and appreciates the danger involved. (*Gomes* v. *Byrne,* 51 Cal.2d 418, 420 [333 P.2d 754].) The evidence does not compel a conclusion that plaintiff knew or appreciated the danger that "Peek-a-Boo" would jump the gate at him. The

court could, and evidently did, infer that he thought himself protected by the gate.

(2) *Do the findings support the judgment? Our answer is that they do.*

It has long been the law in California that one in control of a domestic animal having a dangerous or vicious propensity is liable for injuries caused by the animal through its exercise of that propensity, if the person in control knew or should have known that the animal had such a propensity. In such a case, the liability is said to be absolute; that is, the defendant will be liable even though not negligent. (*Hillman* v. *Garcia-Ruby, supra,* 44 Cal.2d 625; *Gooding* v. *Chutes Co.,* 155 Cal. 620, 624 [102 P. 819, 18 Ann.Cas. 671, 23 L.R.A.N.S. 1071]; *Clowdis* v. *Fresno Flume etc. Co.,* 118 Cal. 315, 320 [50 P. 373, 62 Am.St.Rep. 238]; *Laverone* v. *Mangianti,* 41 Cal. 138 [10 Am.Rep. 269]; *Mann* v. *Stanley,* 141 Cal.App.2d 438 [296 P.2d 921]; *Heath* v. *Fruzia, supra,* 50 Cal.App.2d 598, 600.)

We must construe the findings liberally in support of the judgment and must read all of the findings together to that end. (4 Cal.Jur.2d, § 571, p. 444.)     We think that the finding that the defendants could have ascertained the vicious propensity of the horse by the exercise of reasonable care is equivalent to finding that they should have known that the horse had this propensity, especially in view of the fact that they knew that he had exercised the propensity at Mills College. This is an application of the rule stated in Civil Code, section 19: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

So construed, the findings support the judgment, under the theory of the first two causes of action. The effect of these findings is not destroyed by the additional finding that the defendants did not in fact know of the propensity of the animal. It is enough that, under the circumstances, they should have known. We do not hold that, in the absence of the kind of notice brought home to the defendants by the Mills College incident, they would have been negligent in not investigating the horse, or in permitting it to be shown. That question is not presented by this case.

A person may also be liable for negligence in handling an animal known to be dangerous. (*Clowdis* v. *Fresno*

*Flume etc. Co., supra,* 118 Cal. 315, 321-322; *Baugh* v. *Beatty,* 91 Cal.App.2d 786, 790 [205 P.2d 671]) and may be liable for negligence in handling an animal that is not vicious, or, if vicious, is not known to be so. (*Barnett* v. *La Mesa Post No. 282,* 15 Cal.2d 191 [99 P.2d 650].)

In this case, the negligence was not in the manner in which the animal was handled, but in permitting him to be jumped, at a public exhibition, even when ridden by a skilled rider. This can be negligence only if the defendants knew or should have known, as the court found that they did, that the horse had the dangerous propensity that it had. When to these facts are added the testimony that the horse should have been schooled and was not, and that the surroundings at a public exhibition are more likely to cause a horse to leave the ring than the surroundings in private schooling at defendants' own stable, we think that the finding of negligence is not only supported by the evidence, but also supports the judgment.

The court below may have felt that the case falls within the rule as to the liability of a livery stable keeper to his customer who is injured by a horse hired by the customer. (*Dam* v. *Lake Aliso Riding School,* 6 Cal.2d 395 [57 P.2d 1315]; *Kersten* v. *Young,* 52 Cal.App.2d 1 [125 P.2d 501].) However, we need not decide whether the duties there defined extend beyond the customer to a third party, such as the plaintiff, as the judgment is supported by the evidence and the findings without the necessity of applying the rule in the Dam case.

It may be that the defenses of contributory negligence and assumption of risk are not both available in a case where plaintiff asserts "absolute" liability of a defendant for injury caused by a domestic animal under the defendants' control, but only the defense of assumption of risk. (*Gomes* v. *Byrne,* 51 Cal.2d 418 [333 P.2d 754] [action under the dog bite statute, Civ. Code, § 3342; held, plaintiff assumed the risk]; *Clowdis* v. *Fresno Flume etc. Co., supra,* 118 Cal. 315 [injury caused by a dangerous bull; dictum that the plaintiff must be "free from fault"]; *Mann* v. *Stanley, supra,* 141 Cal.App. 2d 438 [injury caused by a dangerous bull]; *Smythe* v. *Schacht, supra,* 93 Cal.App.2d 315, 321-322 [dog bite; assumption of risk; doubt expressed as to whether contributory negligence is a defense]; *Baugh* v. *Beatty, supra,* 91 Cal.App.2d 786 [chimpanzee bite; judgment for keeper reversed for error in instructions]; *Frederickson* v. *Kepner,* 82 Cal.App.2d 905 [187 P.2d 800] [injury caused by a dangerous dog; finding of no contributory negligence affirmed].)

Defendants assert that because, in a colloquy between the court and counsel, the court indicated its belief that if the animal had a vicious propensity which was known, or should have been known, to the defendants, then these two defenses would not apply, it must be assumed that the court disregarded the defense and that its finding that they are "untrue" must be construed to mean that they are "not available." We cannot follow this reasoning. ▇▇▇ In the first place, this is not what the finding says and we must construe it in a manner that will support rather than defeat the judgment. ▇▇▇ In the second place, the court is not bound in making its findings by any remarks that it may have made during the course of the trial. ▇▇▇ The plaintiff asserted throughout that one ground upon which he was relying was the negligence of the defendants. The court indicated that it felt that contributory negligence and assumption of risk would be defenses to this cause of action, as they clearly would. Since it found that the defendants were negligent in entering the horse in the show, then, if we apply defendants' own line of reasoning we must conclude that the court did consider and intend to find against these defenses rather than merely that they were not applicable. It does not appear that anything said by the court prevented the defendants from offering any evidence that they might otherwise have offered, or that the court improperly excluded any evidence that they did offer in support of these defenses.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.