[No. C007051. Third Dist. May 6, 1993.]

RUTH MILDRED DRAKE, Plaintiff and Appellant, v.
ROBERT DEAN et al., Defendants and Respondents.

**COUNSEL**

Trezza, Ithurburn & Steidlmayer and Bertrand F. Ithurburn for Plaintiff and Appellant.

Moss & Enochian and Stewart C. Altemus for Defendants and Respondents.

**OPINION**

**PUGLIA, P. J.**—Plaintiff filed this action to recover for personal injuries sustained when she was injured by defendants' dog. The complaint alleges two counts sounding respectively in strict liability and negligence. A jury returned a verdict in favor of defendants. On appeal, plaintiff contends the trial court erred in admitting certain evidence and in refusing to give certain instructions, including the standard instructions on negligence. Relying on dicta in this court's decision in *Hagen v. Laursen* (1953) 121 Cal.App.2d 379 [263 P.2d 489], the trial court indicated that instructions on negligence, if given, would be modified to limit defendants' duty to the taking of ordinary care to avoid harm by a domestic animal with dangerous propensities of which defendants knew or should have known. We hold that the dicta in this court's opinion in *Hagen v. Laursen, supra,* upon which the trial court relied, is incorrect to the extent it would engraft onto negligence legal criteria applicable to strict liability. Thus, the *Hagen* court erred in stating that in an action for negligent harm done by defendants' dog, plaintiff must plead and prove that the injury was the result of "the vicious character or evil propensity of the dog" which character or propensity is both "abnormal with regard to the usual actions of these animals" and known to the owner or keeper of the animal. (*Hagen, supra,* 121 Cal.App.2d at p. 382). Since plaintiff presented sufficient evidence of negligence to entitle her to instructions on that theory, unalloyed with legal principles applicable to strict liability, we shall reverse.

Plaintiff and Judy Hightower, both members of the Jehovah's Witnesses Congregation, were engaged in their ministry, going house to house to

discuss the Bible with those who might be interested. As they walked along the driveway toward defendants' house, Hightower noticed defendants' dog, Bandit, sitting near the corner of the house. She said, "Look out, . . . it's a pit bull." Before plaintiff could react, Bandit arrived on the run, jumped on plaintiff and knocked her to the ground. Plaintiff suffered a broken hip and lacerations to her head where it struck some rocks.

Plaintiff testified that before entering onto defendants' property, she received no indication of Bandit's presence. There was no fence surrounding the property, nor were there any signs advising a dog was present or warning against solicitation.

At the time of these events, Bandit was leashed to a chain attached to a 100-foot guy wire which allowed him to run across the front yard of defendants' property and gave him access to the driveway.

After Bandit knocked plaintiff to the ground, Hightower shouted for help, whereupon defendant Robert Dean emerged from his house. According to Hightower, Dean told her Bandit "had a habit of jumping on people."

Dean denied making any such statement. He testified Bandit was well trained, well behaved and liked people. He denied Bandit had a propensity for jumping on people. There was evidence no complaint concerning Bandit had ever been received by the Shasta County Animal Control Office. Several witnesses testified that in their experience Bandit was a well-behaved, gentle animal.

Bandit was an American Staffordshire Terrier, known commonly as a pit bull, and weighed approximately 65 pounds. Plaintiff produced evidence that historically pit bulls were bred for their aggressiveness. Defendant offered evidence that pit bulls are not inherently dangerous to people. Dean did admit Bandit once barked at a stranger and would not let him come up the driveway toward the house.

Near the conclusion of the evidence counsel and the court discussed jury instructions. All agreed plaintiff was entitled to instructions on strict liability for harm done by a domestic animal with known vicious or dangerous propensities abnormal to its class. As to plaintiff's theory of negligence, plaintiff requested the jury be instructed with BAJI Nos. 3.00 and 3.10 on the general principles of negligence.[1] Defendants objected, arguing there could be no finding of negligence absent evidence defendants knew of a dangerous propensity on the part of Bandit.

---

[1]BAJI No. 3.00 states: "A plaintiff who was injured as a [proximate] result of some negligent conduct on the part of a defendant is entitled to recover compensation for such

Relying on *Hagen* v. *Laursen, supra,* 121 Cal.App.2d 379, the trial court ruled it would not give BAJI No. 3.00 or 3.10 unless those instructions were modified. In a discussion with counsel the court suggested the jury should be instructed it could find negligence only if it found Bandit had a dangerous propensity of which defendants knew or should have known. Given the choice of negligence instructions so modified or no instructions on negligence, plaintiff chose the latter alternative. The matter was submitted to the jury solely on the theory of strict liability. By special verdict, the jury found Bandit did not have "a particular vicious or dangerous propensity" and judgment was entered for defendants.

I

California has long followed the common law rule of strict liability for harm done by a domestic animal with known vicious or dangerous propensities abnormal to its class. (E.g., *Hillman* v. *Garcia-Ruby* (1955) 44 Cal.2d 625, 626 [283 P.2d 1033] and authorities cited therein; *Hicks* v. *Sullivan* (1932) 122 Cal.App. 635, 638 [10 P.2d 516] and authorities cited therein.) ▮ This rule is set forth in section 509 of the Restatement Second of Torts (Restatement Second): "(1) A possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm. [¶] (2) This liability is limited to harm that results from the abnormally dangerous propensity of which the possessor knows or has reason to know."

"[Because] [t]he great majority of dogs are harmless . . . the possession of characteristics dangerous to mankind . . . is properly regarded as abnormal to them." (Rest.2d, § 509, com. f.) "[F]rom time immemorial [dogs] have been regarded as the friends and companions of man." (Rest.2d, § 509, com. f.) "[A] dog's bad character or evil disposition is not presumed. The view expressed in *Mason* v. *Keeling* . . . [1699, 12 Mod. 332] that 'the law takes notice, that a dog is not of a fierce nature, but rather the contrary' is

---

injury from that defendant. [¶] Thus, the plaintiff is entitled to a verdict in this case if you find: [¶] 1. That a defendant was negligent, and [¶] 2. That such negligence was a [proximate] cause of injury to the plaintiff."

BAJI No. 3.10 states: "Negligence is the doing of something which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under the circumstances similar to those shown by the evidence. [¶] It is the failure to use ordinary or reasonable care. [¶] Ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence. [¶] [You will note that the person whose conduct we set up as a standard is not the extraordinarily cautious individual, nor the exceptionally skillful one, but a person of reasonable and ordinary prudence.]"

generally adopted. ■■■ A dog is presumed to be tame, docile and harmless until the contrary appears. [Citations.] Harming a human being is regarded as contrary to a dog's nature. 'He errs contra naturam suam [against his nature] by biting or any serious misdoing . . . .' [Citation.]" (*Olson* v. *Pederson* (1939) 206 Minn. 415 [288 N.W. 856, 859].)

It is because dangerous propensities are abnormal to dogs as a class that the rule of strict liability comes into play. "One who keeps a [dog] that to his knowledge is vicious, or which though not vicious possesses dangerous propensities that are abnormal thereby introduces a danger not usual to the community and which, furthermore, is not necessary to the proper functioning of the animal for the purposes that it serves." (Rest.2d, § 509, com. d.) ■■■ "When an owner has reason to believe his dog is savage, ill-tempered, mischievous or dangerous to persons and property, he may be kept only at the owner's risk, who will become liable for damages resulting from such conduct of the dog which exhibits such known traits or character." (*Hicks* v. *Sullivan*, *supra*, 122 Cal.App. at p. 638.)

■■■ "Thus, one who keeps a large dog that he knows to be accustomed to fawn violently upon children and adults is liable under [section 509] for harm done by its dangerous playfulness or over-demonstrative affection. . . . [¶] . . . [Likewise] [i]f the possessor knows that his dog has the playful habit of jumping up on visitors, he will be liable without negligence when the dog jumps on a visitor, knocks him down and breaks his hip . . . ." (Rest.2d, § 509, coms. c, i.)

The rule of strict liability is exemplified in decisions such as *Hicks* v. *Sullivan*, *supra*, 122 Cal.App. 635. There, the plaintiff was attacked by a dog known to its owner (defendant) to be vicious and ill-tempered. Following judgment for plaintiff, this court affirmed, noting: "Most dogs are usually considered domestic, companionable, good natured and harmless. [Citation.] They are valuable as watch dogs and for the care of stock. The law recognizes a property valuation in dogs and authorizes the ownership and possession of such animals. . . . ■■■ [However] '[w]hen it is once established that the dog is of a vicious and mischievous nature and that the person owning or keeping it had knowledge of that fact, the same responsibility attaches to the owner to keep it from doing mischief as the keeper of an animal (which is) naturally ferocious would be subject to, and proof of negligence on the part of the owner of the dog is unnecessary.' '[T]he gravamen of the action is knowledge of the owner that the beast was the possessor of vicious or mischievous propensities. Negligence or lack of care on the part of the owner in keeping or restraining the animal need not be shown.' " (*Hicks* v. *Sullivan*, *supra*, 122 Cal.App. at pp. 637-638.)

In *Hillman* v. *Garcia-Ruby, supra,* 44 Cal.2d 625, the court observed: "There is no dispute as to [the] rule of [strict liability]. ■■ 'The keeper of an animal of a species dangerous by nature, or of any animal which he knows, or has reason to know, to have dangerous propensities, is liable, without wrongful intent or negligence, for damage to others resulting from such a propensity.' [Citations.] The liability of the keeper is absolute, for '[t]he gist of the action is not the manner of keeping the vicious animal, but the keeping him at all with knowledge of the vicious propensities. [Citation.] In such instances the owner is an insurer against the acts of the animal, to one who is injured without fault, and the question of the owner's negligence is not in the case. [Citations.]' " (*Id.* at p. 626.)

In this case plaintiff adduced evidence pit bulls historically were bred for their aggressiveness and that Bandit, who weighed 60 to 70 pounds, had a tendency, known to defendants, to jump on people and in fact jumped on plaintiff, knocking her down and breaking her hip.

The jury was instructed on strict liability in terms of BAJI No. 6.66, as follows: "If you find that the plaintiff was injured by the dog owned or kept by the defendant and that before the plaintiff was injured by said animal the defendant knew or had reason to know of the particular vicious or dangerous trait or propensity in the animal which caused plaintiff's injuries, you will find in favor of the plaintiff and against the defendant and award the plaintiff such damages as you find that the plaintiff suffered from injuries which legally resulted from such vicious or dangerous trait or propensity. [¶] An owner or keeper of an animal has reason to know of the trait or propensities of the animal when the owner or keeper has notice of facts that a reasonable person would have."

■■ Plaintiff complains, however, that the trial court erred in refusing her special instruction on strict liability, which stated: "The (a) vicious propensities and dangerous character of a dog and (b) knowledge thereof by his owner may be inferred from evidence that the dog was kept (1) tied (2) as a watchdog and also (3) from his size and breed."

Plaintiff's rejected instruction is taken verbatim from *Frederickson* v. *Kepner* (1947) 82 Cal.App.2d 905 [187 P.2d 800], which involved an attack on plaintiff, a customer of defendant, by defendant's "75-pound German police dog." (*Id.* at p. 907.) The dog was kept on defendant's business' premises 24 hours a day to guard the business. Although two other dogs also kept on the premises were allowed to run free, the police dog was kept tied up at all times except occasionally in the evening when, "for the purpose of exercise" and "accompanied by someone," the dog was untethered. (*Id.* at

pp. 907, 909.) Based on these facts, the *Frederickson* court reversed a judgment of nonsuit, ruling sufficient evidence was presented by which a jury could infer the police dog had a dangerous nature and defendant's knowledge thereof. (*Id.* at pp. 908-909.)

■   Although correct statements of the law taken from opinions of reviewing courts may provide a basis for instructions, "an extract may be inappropriate if the facts underlying the opinion are different from those presented in the new case." (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 250, p. 255.)

■   *Frederickson* involved an appeal from a judgment of nonsuit, and held only that there was sufficient evidence to submit to the jury the issue whether the police dog was a dangerous animal. *Frederickson* does not stand for the rule the jury should be given particular instructions setting forth the specific facts from which an inference of dangerousness may be drawn. Nor should such an instruction have been given here. ■   An instruction which singles out and emphasizes portions of the evidence is argumentative and improper. ■   Plaintiff was no more entitled to her requested instruction than defendants would have been to an instruction that the jury could infer Bandit had no dangerous propensity from the lack of any complaint to the animal control department and the fact certain witnesses testified Bandit was gentle and well behaved. The question whether Bandit had a vicious or dangerous propensity was for the jury to decide based upon all of the evidence. Counsel were free to argue the evidence and the inferences that could be drawn from it, but no additional instructions were necessary to assist the jury in its determination of the question of dangerousness.

## II

We address plaintiff's contention it was error to refuse her proferred negligence instructions. The common law recognizes negligence as a distinct legal theory of recovery for harm caused by domestic animals that are not abnormally dangerous. ■   Restatement Second section 518 provides: "Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if . . . (b) he is negligent in failing to prevent the harm."[2]

The amount of care required of a keeper of a domestic animal that is not abnormally dangerous is commensurate with the character of the animal.

---

[2]The elided subdivision (a) imposes liability on the keeper if he "intentionally causes the animal to do the harm."

(Rest.2d, § 518, com. f.) Keepers of such "domestic animals [which are] of a class that can be confined to the premises of their keepers or otherwise kept under constant control without seriously affecting their usefulness . . . are under a duty to exercise reasonable care to have them under a constant and effective control." (Rest.2d, § 518, com. e.) Otherwise, "many [such animals] are recognizably likely to do substantial harm while out of control." (*Ibid.*)

On the other hand, "[t]here are certain domestic animals so unlikely to do harm if left to themselves and so incapable of constant control if the purpose for which it is proper to keep them is to be satisfied, that they have traditionally been permitted to run at large. This class includes dogs, . . . . Although it is not impossible to confine dogs to the premises of their keepers or to keep them under leash when taken into a public place, they have been traditionally regarded as unlikely to do substantial harm if allowed to run at large, so that their keepers are not required to keep them under constant control. . . . However, although the possessor or harborer of a dog . . . is privileged to allow it to run at large and therefore is not required to exercise care to keep it under constant control, he is liable if he sees his dog . . . about to attack a human being or animal or do harm to crops or chattels and does not exercise reasonable care to prevent it from doing so." (Rest.2d, § 518, com. j.)

"One who keeps a domestic animal that possesses only those dangerous propensities that are normal to its class is required to know its normal habits and tendencies. He is therefore required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm." (Rest.2d, § 518, com. h.)

In determining the keeper's liability for negligence for injuries inflicted by a domestic animal, the criterion usually adopted is one of reasonable anticipation of the occurrence, i.e., foreseeability. (*Hagen* v. *Laursen, supra,* 121 Cal.App.2d 379, 383; see 4 Am.Jur.2d, Animals, § 89, p. 337.)

*Endresen* v. *Allen* (Wyo. 1978) 574 P.2d 1219 involved a dog with a proclivity to escape from the yard and chase motor vehicles. The dog escaped and chased plaintiff, who was riding a motorcycle, causing plaintiff to crash and sustain injury. Plaintiff sued the dog's owner on theories of negligence and violation of a local ordinance requiring dogs to be kept off the public streets. Since plaintiff's theories did not include strict liability, dangerous propensity of the dog abnormal to its class was not an issue.

Concerning negligence, the reviewing court commented: "We think that there was sufficient evidence of negligence to justify submission to the finder of the facts the question whether defendants should reasonably have anticipated that injury would result from their failure properly to secure the dog and whether they negligently failed properly to secure the dog." (*Endresen* v. *Allen, supra,* 574 P.2d at p. 1222.)[3]

In *Arnold* v. *Laird* (1980) 94 Wn.2d 867 [621 P.2d 138, 140-141] the court, with specific reference to Restatement Second section 518, held: "[A] negligence cause of action arises when there is ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence. The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries that could have been reasonably foreseen." (See also *Bocker* v. *Miller* (1963) 213 Cal.App.2d 345, 348 [28 Cal.Rptr. 818]; *Williams* v. *Johnson, supra,* 781 P.2d at pp. 926-929 and authorities cited therein (dis. opn. of Urbigkit, J.).)

In *Ryman* v. *Alt* (Minn. 1978) 266 N.W.2d 504, plaintiff, a guest in defendant's home, was bitten by defendant's Saint Bernard. The dog was chained near the driveway. Defendant invited plaintiff to pet the animal. As plaintiff approached, the dog leaped at her and bit her in the face. Defendant was then heard to say, " 'I should have gotten rid of this dog because it bit me once before.' " Although the complaint alleged both strict liability and negligence, the court instructed the jury only on strict liability for harm by animals with known vicious or dangerous propensities.[4] Defendant prevailed and plaintiff appealed, asserting instructional error. (*Ryman* v. *Alt. supra,* 266 N.W.2d at p. 506.)

The *Ryman* court held plaintiff was entitled to go to the jury also on negligence: "On several occasions, we have recognized a cause of action for injuries inflicted by a domestic animal based entirely upon the negligence of the animal's owner or keeper. [Citations.] [¶] A plaintiff who believes his proof may be adequate to establish negligence by the animal's keeper may also proceed under the common-law scienter theory. The scienter action is

---

[3]Although the *Endresen* court made no mention of Restatement Second section 518, in a later case the court suggested *Endresen*'s discussion of negligence was based on that section. (*Williams* v. *Johnson* (Wyo. 1989) 781 P.2d 922, 923.)

[4]In these circumstances California by statute imposes strict liability irrespective of scienter. Civil Code section 3342 provides in relevant part that "The owner of any dog is liable for the damages suffered by any person who is bitten by the dog while in a public place or lawfully in a private place, including the property of the owner of the dog, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness."

not based on negligence; once the animal's dangerousness and the keeper's scienter are proved, liability follows unless the person injured voluntarily and knowingly assumed the risk of injury [citations]. The gravamen of the tort for which recovery is allowed is simply the *keeping* of an animal known to be vicious. [Citation.] Scienter actions for injuries by domestic animals seem more numerous than negligence actions, perhaps because many such injuries occur while the animal's keeper is not present and proof of negligence may be difficult. [¶] [Plaintiff] here appropriately pleaded negligence. If [her] proof is adequate to show [defendant] was negligent, [she] may recover without showing viciousness of the dog and scienter. Conversely, recovery may be had absent proof of negligence by showing that the dog had a vicious propensity known to [defendant]." (Italics in original. 266 N.W.2d at p. 508.)

In *Westberry* v. *Blackwell* (1978) 282 Ore. 129 [577 P.2d 75] defendant's dog inflicted a superficial bite on plaintiff's hand as plaintiff made her way into defendant's house. As plaintiff was leaving, and after being assured by defendant the dog was docile, the dog bit plaintiff even more severely on the other hand. Plaintiff sued on theories of strict liability and negligence but nonsuit was granted as to both theories.

On appeal, the court found there was sufficient evidence to go to the jury on the theory of strict liability for known dangerous propensity. Thereafter, the court, citing Restatement Second section 518, also found sufficient evidence to go to the jury on negligence:

"Plaintiff's second cause of action alleged defendants were negligent in failing to confine the dog. Failure to confine or control such a domestic animal can give rise to a cause of action in negligence.

"[H]ere, the evidence indicates [defendant] could have controlled or confined the dog when she knew plaintiff was leaving the premises. She knew the dog had bitten plaintiff on her way into the house. Whether a reasonable person in the exercise of ordinary care would have restrained the dog is properly a question for the jury.

"The defendants' motion for a judgment of involuntary nonsuit should not have been granted. Viewing the evidence in the light most favorable to the plaintiff, a legitimate question of fact for the jury was presented, both as to the charge in strict liability and the charge in negligence." (*Westberry, supra,* 577 P.2d at pp. 76-77, fn. omitted.)

In *DeRobertis* v. *Randazzo* (1983) 94 N.J. 144 [462 A.2d 1260] the jury returned a verdict in favor of plaintiff, a five-year-old child bitten by

defendant's dog. Although the judgment was reversed on other grounds, the court explained both strict liability and negligence were viable theories of recovery: "If a plaintiff proves scienter, a dog-owner is absolutely liable for injuries caused by the dangerous characteristic of the dog. . . ." (*DeRobertis* v. *Randazzo, supra,* 462 A.2d at p. 1267.) Citing Restatement Second section 518, the court commented: "If, on the other hand, the plaintiff is unable to prove that the owner knew or should have known of the dog's dangerous characteristics, then the owner is liable only if the plaintiff is able to prove that the owner acted negligently in keeping the dog." (*Id.* at pp. 1266-1267.)

In *Hagen* v. *Laursen, supra,* 121 Cal.App.2d 379, plaintiff was injured when defendants' two dogs ran against plaintiff, a neighbor who was visiting on defendants' property, and caused her to fall and injure herself. Plaintiff sued on theories of general negligence and negligence per se arising from defendants' alleged violation of a dog control ordinance. Plaintiff secured a judgment and defendants appealed. Defendants' sole contention on appeal was that the evidence was insufficient as a matter of law to support the judgment. On the negligence per se theory this court held plaintiff failed to prove she was within the class for whose protection the ordinance was enacted. (*Id.* at p. 386).

This court also held plaintiff failed to prove general negligence predicated on any act or omission of defendants. Defendants' two dogs were Irish setters, approximately five years old and weighing respectively thirty-five and forty-five pounds, more or less. "On the occasion when plaintiff was injured the dogs were frolicking, occasionally going into the road and back to their home grounds. They romped and played with each other; would jump at each other, wrestle, run, roll over, pretend to bite each other, and generally indulge in the antics usual with dogs at play. Their actions were described as the average play of a dog. No one had seen them run into anyone while playing, before [plaintiff] received her injuries. They were not shown to have been more boisterous than dogs usually are. There was no evidence that these dogs were vicious." (121 Cal.App.2d at p. 380.)

"[Plaintiff] was well acquainted with the dogs and had often observed them at play. At the time of the accident [plaintiff] had seen the dogs playing and while this was going on had gone across the road and onto the premises of [defendants] where she stood conversing with a group of people, which included [defendant] and some relatives of [plaintiff]. The dogs were frolicking about, the women were talking; [plaintiff] stood with her back toward the area in which the dogs were for the moment at play and did not, therefore, see them approaching her. Others, however, including [defendant]

saw the dogs coming, but no one said or did anything. One or perhaps both of the dogs while so playing and frolicking ran against the back of [plaintiff's] legs at about the knees, causing her to fall sharply to the ground and to suffer a broken hip and various less serious bruises and lacerations. There was nothing in the nature of an attack by either animal." (121 Cal.App.2d at p. 381.)

After an excursive discussion in which legal principles governing strict liability and negligence were conflated (121 Cal.App.2d at pp. 382-383), this court analyzed defendants' contention that the evidence, as a matter of law, was insufficient to prove a charge of general negligence: "Giving full play to the rule that negligence is usually a question of fact, still negligence cannot be here predicated upon any act or omission of [defendant]. The ground of liability here is reasonable anticipation of the occurrence and reasonable opportunity to act. Dogs at play rarely run against stationary objects whether tree, post or person. They generally look where they are going and this is self-preservation. We are unable to see where in the situation confronting her [defendant] could reasonably be held to anticipate that the playing dogs would blindly run into a group of people and knock one of them down. . . . Here was misadventure pure and simple without liability . . . ." (*Id.* at p. 383.)[5]

As the Restatement Second section 518 and the cases indicate, negligence may be predicated on the characteristics of the animal which, although not abnormal to its class, create a foreseeable risk of harm. As to those characteristics, the owner has a duty to anticipate the harm and to exercise ordinary care to prevent the harm. (See *Hagen* v. *Laursen, supra,* 121 Cal.App.2d at pp. 382-383.) "The common law [] provided that the owner of an animal which was not vicious . . . but which was prone to some other potentially harmful behavior, could be held liable under a theory of negligence for any injury proximately caused by such behavior. In such cases the owner was only liable if, having knowledge of the particular propensities which created a foreseeable risk of harm, he failed to exercise reasonable care in control of the animal." (*Williams* v. *Johnson, supra,* 781 P.2d at p. 923, citing Rest.2d, § 518; *Kathren* v. *Olenik* (1980) 46 Ore.App. 713 [613 P.2d 69, 73], citing Rest.2d, § 518.)

■ Defendants rely on *Hillman* v. *Garcia-Ruby, supra,* 44 Cal.2d 625, for the proposition that there can be no liability based on negligence for injury caused by a domestic animal unless the animal has dangerous propensities of which the owner knows or should have known. In *Hillman,* the

---

[5]The court was "somewhat persuaded to this view" (121 Cal.App.2d at p. 383), also because if there was danger, plaintiff was as aware of it as defendants and assumed the risk. (*Id.* pp 383-384.)

plaintiff was walking along a public sidewalk when defendants' dog jumped on her, knocked her to the ground and injured her. The trial court refused plaintiff's requested instruction the keeper of a dog with known dangerous propensities is under an absolute duty to restrain the animal. The court instructed on negligence but imposed a duty of care only where "a keeper of a dog knows it to have dangerous propensities." (*Hillman* v. *Garcia-Ruby, supra,* 44 Cal.2d at p. 627, fn. 1.) The jury returned a verdict in favor of defendants, and plaintiff appealed. The only contention on appeal was that the trial court erred in refusing to instruct on strict liability. (*Id.* at p. 627 & fn. 3.)

The *Hillman* court held the trial court erred in refusing strict liability instructions but that the error was harmless. The court noted instructions on strict liability would have required the jury find defendants knew of the dog's dangerous propensities. The negligence instructions, as given, imposed that same requirement. Thus, the only difference between strict liablity and the negligence instructions presented to the jury is that the former theory imposes an absolute duty to restrain the dog while the duty under the latter theory requires only the exercise of ordinary care. As the evidence was uncontradicted defendants did nothing whatever to restrain the dog, i.e., they failed to exercise even ordinary care, the verdict in favor of defendants necessarily indicated the jury found the dog had no known dangerous propensities. Thus, a result more favorable to plaintiff would not have have been reached if strict liability instructions had been given. (44 Cal.2d at p. 628.)

*Hillman* does not support defendants' position because on appeal the plaintiff in *Hillman* did not challenge the correctness of the negligence instructions which, as given, conditioned the existence of a duty of care on defendants' knowledge of a dangerous tendency of their dog. The only issue plaintiff tendered on appeal was the trial court's refusal to instruct on strict liability. Thus the *Hillman* court had no occasion to speak to the validity of the instructions on negligence and did not do so.

In this case, plaintiff offered BAJI instruction Nos. 3.00 and 3.10 in support of her theory defendants were negligent in the care and control of Bandit. (See fn. 1, *ante*.) The offer was refused, and the case went to the jury only on strict liability instructions. By special verdict, the jury found Bandit did not have "a particular vicious or dangerous propensity[.]" Since the evidence was uncontradicted that Bandit jumped on plaintiff and knocked her down, the special verdict implies the jury found either such conduct was not dangerous or, even if dangerous, was atypical of Bandit. If the latter, the jury presumably found plaintiff did not carry her burden of proving that

Bandit had a propensity for such conduct, that is, "a natural inclination" or an "innate or inherent tendency" (Webster's Third New Internat. Dict. (1971) p. 1817) to act as he did.

Although the jury found Bandit had no vicious or dangerous propensity, that finding did not resolve the question of negligence tendered by plaintiff's complaint. Plaintiff alleged defendants "negligently . . . failed to . . . control" Bandit. Thus, there were issues whether Bandit posed a risk of harm to others; whether that risk was reasonably foreseeable; and if so, whether defendants failed to exercise ordinary care to avert that risk by controlling Bandit.

Unlike *Hagen* v. *Laursen, supra,* where the dogs' conduct prompted the court to observe that "dogs at play rarely run into stationary objects whether tree, post or person" (121 Cal.App.2d at p. 383), the facts here prompt us to observe that it is not unknown for dogs to jump on people. (E.g., see Rest.2d, § 509, com. i.) Thus, it may reasonably be anticipated that a dog which has jumped on people before will do it again, whereas it is not reasonable to suppose that a dog that has, for whatever reason, run into an immovable object will not have been discouraged from repeating that conduct. Thus, we cannot say as a matter of law that no reasonable jury could find defendants could not have anticipated either the event or the harm that resulted. Plaintiff presented evidence that defendant Dean knew Bandit "had a habit of jumping on people," from which an inference could be drawn that such conduct was reasonably foreseeable. And, as we have indicated, the special verdict does not necessarily exclude the possibility the jury credited that evidence.

Moreover, even though the jury found jumping on people not to be a dangerous propensity, we cannot say that a jury which exonerated Bandit of a vicious or dangerous propensity, if instructed on negligence, would necessarily have found that Bandit's conduct was not potentially harmful even though the jury did not regard it as vicious or dangerous. Instead, the jury may have regarded Bandit's conduct as playful or perhaps as manifesting an unrestrained friendliness and thus have been disinclined to characterize it as vicious or dangerous.

The evidence also presented a question for the jury on the issue of breach, i.e., whether defendants, knowing of Bandit's potential to do harm, exercised ordinary care to avert that harm by adequately controlling him. Although Bandit was on a leash, the radius of the tether gave him access to defendants' driveway on which visitors to defendants' house approached.

We conclude the trial court erred prejudicially in refusing to instruct the jury on negligence unalloyed with strict liability.[6]

We acknowledge that in refusing standard negligence instructions, the trial court was led into error by this court's decision in *Hagen* v. *Laursen, supra.* We do not disagree with the holding of *Hagen* v. *Laursen,* nor do we fault the *Hagen* court's analysis to the extent it applied the law of negligence to the facts of the case. (121 Cal.App.2d at pp. 383-386.) However, the *Hagen* court also discussed strict liability (*id.* at pp. 382-383) and cited cases in which strict liability was in issue whereas in the case before it there was no issue of strict liability presented. Although the discussion was unnecessary to the court's holding and therefore dicta, its presence in a case involving only negligence very strongly implies that the principles of strict liability there discussed are applicable in an action for negligence. To the extent *Hagen* so implies, it is overruled.[7]

---

[6]The dissent mistakenly ascribes to the majority the position, obviously unsupportable in law, that it is "foreseeable that dogs, *regardless of their prior characteristics*, will react to strangers coming on their owners' property in a dangerous and harmful way." (Italics added, dis. opn., *post,* at p. 943.) The dissenting justice then mistakenly taxes the majority with the "misapprehension that the owners of a *peaceful dog* are liable in negligence if the animal causes some injury to a person and the owners could have prevented the harm had they confined or controlled the dog." (Italics added, dis. opn., *post,* at p. 943.)

We acknowledge that the dog is man's best friend and have no desire to spurn or betray that friendship nor design to hold his master liable for conduct of the dog in acting as dogs characteristically and commonly act, i.e., peacefully and harmlessly. Moreover, we acknowledge that the owner is not liable in negligence for any harmful conduct of his dog that was not reasonably foreseeable. Here, however, there was evidence from which a jury instructed on negligence could have found Bandit's conduct was harmful and reasonably foreseeable and that defendants did not exercise ordinary care in so controlling Bandit as to avert his known potential to cause harm.

[7]The *Hagen* court relied on the Restatement of Torts whereas we rely on its successor, the Restatement Second. (See *Canfield* v. *Security-First National Bank* (1939) 13 Cal.2d 1, 30-31 [87 P.2d 830]; *Scholey* v. *Steele* (1943) 59 Cal.App.2d 402, 405 [138 P.2d 733].) We are constrained to note that former section 518 of the Restatement of Torts governing negligence liability for harm done by domestic animals which are not abnormally dangerous underwent significant change in the Restatement Second. We quote the relevant parts of section 518 of the Restatement Second at page 924, *ante.* Former section 518 of The Restatement, in effect when *Hagen* v. *Laursen, supra,* was decided, reads as follows: "(1) Except as stated in Subsection (2) and §§ 504-5, one who possesses or harbors a domestic animal, which he does not have reason to know to be abnormally dangerous but which is likely to do harm unless controlled, is subject to liability for harm done by such animal if, but only if, [¶] (a) he fails to exercise reasonable care to confine or otherwise control it, and [¶] (b) the harm is of a sort which it is normal for animals of its class to do. [¶] (2) A possessor or harborer of a domestic animal which, because it is of a class unlikely to do harm and difficult to confine, he is privileged to allow to run at large, and which he does not have reason to know to be abnormally dangerous, is not liable for any harm done by it while at large."

Note that under subsection (2) of former section 518 a keeper of a dog which is not abnormally dangerous "is not liable for any harm done by it while at large." This exception to

## III

For the benefit of court and counsel on remand, we address plaintiff's contention the trial court erred in allowing the witness Hightower to be cross-examined with regard to whether her status as a fellow Jehovah's Witness or some tenet of her faith biased her in favor of plaintiff. Plaintiff cites as authority Evidence Code section 789 which states: "Evidence of . . . religious belief or lack thereof is inadmissible to attack or support the credibility of a witness." Plaintiff's claim fails for two reasons.

First, plaintiff did not argue Evidence Code section 789 to the trial court as a basis for her objection to defendants' cross-examination of Hightower. Prior to trial plaintiff had moved *in limine* to restrict any inquiry into either her or Hightower's religious beliefs. Plaintiff did not then raise Evidence Code section 789 as the basis for her motion. Moreover, the trial court deferred decision on the *in limine* motion to the appropriate point at trial. When the issue arose during Hightower's testimony, the court ruled a limited inquiry on the issue of bias would be permitted. Plaintiff's sole objection at that point was that a particular question asked by the defense was "vague and ambiguous." Because there was no objection based on Evidence Code section 789, that issue has been waived on appeal. (Evid. Code, § 353.)

Equally important, Evidence Code section 789 does not preclude the inquiry made by the defense. This section simply codifies existing law expressed over a century ago in *People* v. *Copsey* (1887) 71 Cal. 548 [12 P. 721], that evidence relating to whether a witness possesses or lacks religious beliefs is inadmissible on the issue of his credibility as a witness. (*Id.* at p. 550.) *Copsey*, in turn, was based on the provisions of article I, section 4 of the California Constitution, which states "[a] person is not incompetent to be a witness or juror because of his or her opinions on religious beliefs." While one cannot be precluded from testifying because he lacks religious belief, relevant inquiry whether a witness's membership in a particular religious sect or a tenet of his faith might tend to bias him is not prohibited.

The judgment is reversed. Plaintiff is to recover costs.

Nicholson, J., concurred.

---

liablity does not appear in current section 518. No doubt, this change reflects the evolution of our society from largely rural to predominantly urban with consequent diminished tolerance for unconfined domestic animals.

**SPARKS, J.,** Dissenting.—Today, the majority holds that the owners of a dog not previously vicious or dangerous are liable in negligence for failing to control the animal because it is foreseeable that such a dog will jump up on people and knock them down. This greatly, and I think mistakenly, expands the liability of dog owners in California.

As the majority sees it, "[a]lthough the jury found Bandit had no vicious or dangerous propensity, that finding did not resolve the question of negligence tendered by plaintiff's complaint." (Maj. opn., *ante*, at p. 931.) To the contrary, that finding did resolve the question of negligence because, as we shall see, absent such a propensity the owners had no duty to control or confine their dog. By drawing an untenable distinction between dogs which are dangerous on the one hand and those which pose a foreseeable risk of harm on the other, the majority has transmogrified the question of legal duty into a factual issue for the jury. This unwarranted distinction lies at the heart of the majority's misperception of the element of duty. It is our task, and not the jury's, to determine if the defendants had a duty to confine or constantly control their dog. Under the law, any propensity of a dog which might foreseeably cause harm to people, whether that tendency arises from an unrestrained friendliness at one end of the spectrum or from a vicious proclivity at the other, imposes upon the owners a duty to use reasonble care, provided only that the owners knew or should have known of that propensity. This duty arises because, in the eyes of the law, such a dog is deemed dangerous.[1] But if the dog is neither vicious nor dangerous, then the law imposes no duty on the owners to control or confine their dog. Here, the jury expressly found that the dog was neither vicious nor dangerous and hence inferentially found that the dog was peaceful and docile. Consequently, we should say (as numerous courts have said before us) that as a matter of law it is not foreseeable that a docile dog will cause harm to people in the absence of some knowledge of a vicious, dangerous or abnormal characteristic of the dog or in the absence of some negligent mishandling of the dog by its owners. For this reason, together with other policy considerations, the law imposes no duty upon the owners of a docile dog to confine or constantly control their pet.

---

[1] It is no answer to suggest that the technical legal definition of dangerousness in a domestic animal is at odds with the common understanding of the term and that "the jury may have regarded Bandit's conduct as playful or perhaps as manifesting an unrestrained friendliness and thus have been disinclined to characterize it as vicious or dangerous." (Maj. opn., *ante*, at p. 931.) Plaintiff did not request any such clarifying instruction explaining that "[a]ny propensity on the part of a domestic animal, which is likely to cause injury to human beings under the circumstances in which the party controlling the animal places him, is a dangerous or vicious propensity within the meaning of the law." (*Talizin* v. *Oak Creek Riding Club* (1959) 176 Cal.App.2d 429, 435 [1 Cal.Rptr. 514, 80 A.L.R.2d 878].) Having failed to request such an instruction, plaintiff cannot now claim that the jury's finding of nondangerousness must be disregarded.

Although I agree with the majority that a form of negligence was an alternate theory of recovery in this case, the error in refusing to instruct on that theory was waived by plaintiff and in any event was rendered harmless by the jury's special verdict.

It has been noted that "[i]n general the common law distinguishes between wild and domesticated animals for purpose of imposing liability on their owners. Under the common law an owner or keeper of a wild animal is absolutely liable for injuries inflicted by such animal, regardless of the absence of any negligence on his part or the contributory negligence of the person injured, while an owner or keeper of a domesticated animal which is not naturally dangerous to mankind, such as a dog or cat, is not subject to liability for harm done by the animal if he does not know or have reason to know that the animal is abnormally dangerous. However, when the owner or keeper of a dog or cat knows or has reason to know that the animal has a dangerous propensity abnormal to its class, the animal passes into the wild animal category, and its owner becomes strictly liable for injuries inflicted by the animal which result from the particular dangerous propensity known to him, even though the owner exercised the utmost care to prevent the animal from doing the harm." (Annot., Liability of Owner or Operator of Business Premises for Injury to Patron by Dog or Cat (1989) 67 A.L.R.4th 976, 985, citations and fns. omitted.)

For the most part, California[2] and the Restatement Second of Torts follow this common law imposition of liability. As the majority recounts, in California an owner of a dog is liable without negligence when the dog causes injury and the owner knew or should have known of the vicious or dangerous propensity which caused the injury. (*Hillman* v. *Garcia-Ruby* (1955) 44 Cal.2d 625, 626 [283 P.2d 1033].) In the words of the Restatement Second of Torts, "[a] possessor of a domestic animal that he knows or has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm done by the animal to another, although he has exercised the utmost care to prevent it from doing the harm." (Rest.2d Torts, § 509, subd. (1).)

A dangerous propensity need not be a vicious one. "The rule is also applicable if the animal is not vicious but has a dangerous tendency that is unusual and not necessary for the purposes for which such animals are usually kept. Thus, one who keeps a large dog that he knows to be accustomed to fawn violently upon children and adults is liable under the rule

---

[2]As is the case with many states, California has enacted a "dog bite" statute which supersedes the common law rule by dispensing with the necessity of proving the scienter requirement. (Civ. Code, § 3342.) Because the dog in this case did not bite the plaintiff, and since this statute imposes liability only "for the damages suffered by any person who is bitten by the dog" (Civ. Code, § 3342, subd. (a)), it has no application here.

stated in this Section [i.e., strictly liable] for harm done by its dangerous playfulness or over-demonstrative affection. . . ." (Rest.2d Torts, § 509, com. c.) Consequently, "[i]f the possessor knows that his dog has the playful habit of jumping up on visitors, he will be liable without negligence when the dog jumps on a visitor, knocks him down and breaks his hip." (Rest.2d Torts, § 509, com. i.) Once again, the law of California is in accord with the Restatement. The propensity in question is not limited to "a propensity to attack human beings. Any propensity on the part of a domestic animal, which is likely to cause injury to human beings under the circumstances in which the party controlling the animal places him, is a dangerous or vicious propensity within the meaning of the law." (*Talizin* v. *Oak Creek Riding Club, supra,* 176 Cal.App.2d at p. 435.)

On the other hand, if the owner of a domestic animal (such as a dog) does not know, or have reason to know, the animal is vicious or abnormally dangerous, he is liable only if he was negligent. Under the Restatement, in such a case the owner "is subject to liability for harm done by the animal if, but only if, . . . he is negligent in failing to prevent the harm." (Rest.2d Torts, § 518, subd. (b).) The amount of care required "is commensurate with the character of the animal." (Rest.2d Torts, § 518, com. f.) "In determining the care that the keeper of a not abnormally dangerous domestic animal is required to exercise to keep it under control, the characteristics that are normal to its class are decisive, and one who keeps the animal is required to know the characteristics. . . ." (Rest.2d Torts, § 518, com. g.) The keeper "is therefore required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm. Thus the keeper of even a gentle bull must take into account the tendencies of bulls as a class to attack moving objects and must exercise greater precautions to keep his bull under complete control if he drives it upon a public highway." (Rest.2d Torts, § 518, com. h.) Under the Restatement, certain classes of domestic animals "can be confined to the premises of their keepers or otherwise kept under constant control without seriously affecting their usefulness and which are not abnormally dangerous. Although the utility of these animals is sufficient to justify their being kept without risk of the strict liability stated in § 590, many of them are recognizably likely to do substantial harm while out of control and, therefore, their keepers are under a duty to exercise reasonable care to have them under a constant and effective control. . . ." (Rest.2d Torts, § 518, com. e.) Dogs, however, are not within this class of domestic animals.

Under the Restatement's rule, dogs do not have to be confined or constantly kept under control. "There are certain domestic animals so unlikely to do harm if left to themselves and so incapable of constant control if the

purpose for which it is proper to keep them is to be satisfied, that they have traditionally been permitted to run at large. This class includes dogs, . . . Although it is not impossible to confine dogs to the premises of their keepers or to keep them under leash when taken into a public place, they have been traditionally regarded as unlikely to do substantial harm if allowed to run at large, so that their keepers are not required to keep them under constant control." (Rest.2d Torts, § 518, com. j.)

It follows from this that the owners of a dog which is not vicious or abnormally dangerous have no duty to confine their pet or to keep it under constant control. Absent such a duty, there can be no liability for the failure to control or maintain the dog. (*Nava* v. *McMillan* (1981) 123 Cal.App.3d 262, 265 [176 Cal.Rptr. 473].) "The threshold element of a cause of action for negligence is the existence of a duty to use care toward an interest of another that enjoys legal protection against unintentional invasion." (*Bily* v. *Arthur Young & Co.* (1992) 3 Cal.4th 370, 397 [11 Cal.Rptr.2d 51, 834 P.2d 745].) As the high court made clear in *Ballard* v. *Uribe* (1986) 41 Cal.3d 564 [224 Cal.Rptr. 664, 715 P.2d 624], "[t]he question of 'duty' is decided by the court, not the jury. As this court has explained, 'duty' is not an immutable fact of nature, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. In California, the general rule is that all persons have a duty to use ordinary care to prevent others being injured as the result of their conduct. . . . (*Rowland* v. *Christian* (1968) 69 Cal.2d 112 . . . ; Civ. Code, § 1714.) *Rowland* enumerates a number of considerations, however, that have been taken into account by courts in various contexts to determine whether a departure from the general rule is appropriate: the major [considerations] are *the foreseeability of harm to the plaintiff*, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. The foreseeability of a particular kind of harm plays a very significant role in this calculus, but a court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently

likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party."[3] (*Id.* at pp. 572-573, fn. 6, some citations and internal quotation marks omitted, italics in original.) In sum, "[w]hile in many contexts foreseeability is a question of fact for the jury, in defining the boundaries of duty, foreseeability is a question of law for the court." (*Scott* v. *Chevron U.S.A.* (1992) 5 Cal.App.4th 510, 516 [6 Cal.Rptr.2d 810].)

The California authorities and the Restatement treat dogs as a "domestic animal," that is "an animal that is by custom devoted to the service of mankind at the time and in the place in which it is kept." (Rest.2d Torts, § 506, subd. (2).) Dogs "have from time immemorial been regarded as the friends and companions of man. The great majority of dogs are harmless, and the possession of characteristics dangerous to mankind . . . is properly regarded as abnormal to them." (Rest.2d Torts, § 509, com. f.) It is therefore not foreseeable under the law that such a "harmless" animal "devoted to the service of mankind" will suddenly cause harm to people in the absence of actual or imputed knowledge of some dangerous or vicious characteristic of the dog. As we noted in *Hagen* v. *Laursen* (1953) 121 Cal.App.2d 379 [263 P.2d 489], "the law takes notice that a dog is not of a fierce nature, but rather the contrary is generally adopted. A dog is presumed to be tame, docile and harmless until the contrary appears. . . . Harming a human being is regarded as contrary to a dog's nature." (*Id.* at p. 382, quoting *Olson* v. *Pederson* (1939) 206 Minn. 415 [288 N.W. 856, 859], citations and internal quotation marks omitted.) In short, dogs are presumed by the law to be harmless and nondangerous and thus it is not foreseeable that these benign pets will cause injury to people in the absence of evidence to the contrary.

We made this precise point in *Hagen*, the case so disparaged by the majority. There, we held as a matter of law that it was not foreseeable that defendant's dogs would heedlessly run into a group of people and knock one of them down. "Dogs at play rarely run against stationary objects whether tree, post or person. They generally look where they are going and this is self-preservation. We are unable to see where in the situation confronting her [the defendant] could reasonably be held to anticipate that the playing dogs would blindly run into a group of people and knock one of them down. . . . Here was misadventure pure and simple without liability . . . ." (121 Cal.App.2d at p. 383.) The point was reiterated in *Nava* v. *McMillan, supra,*

---

[3]The *Ballard* court went on to explain that "[t]he jury, by contrast, considers foreseeability' in two more focused, fact-specific settings. First, the jury may consider the likelihood or foreseeability of injury in determining whether, in fact, the particular defendant's conduct was negligent in the first place. Second, foreseeability may be relevant to the jury's determination of whether the defendant's negligence was a proximate or legal cause of the plaintiff's injury." (41 Cal.3d at p. 573, fn. 6.)

123 Cal.App.3d 262, 266, where the court held "[i]n this particular instance, defendants could not reasonably foresee that the mere appearance of the dogs at the fence or their barking might cause plaintiff, who was on the public side of the fence, to become frightened and to run into the street where she was subsequently struck by an automobile."

Examining the factors set forth in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], to determine whether a duty exists, the *Nava* court went on to state: "Our conclusion on the unforeseeability of harm in this case also applies to the factors of certainty of injury and closeness of the connection between the defendant's conduct and the injury suffered. Also, no moral blame can be attached to defendant dog owners here as they kept the dogs on premises completely surrounded by chain link fencing. Needless to say, the consequences upon the community of imposing a duty as suggested by plaintiff would be totally unreasonable: the owner of a dog would in effect be required to keep man's best friend' in a place where it could neither be seen nor heard by members of the public passing by. In short, the duty sought to be imposed by plaintiff offends common sense." (123 Cal.App.3d at p. 266.) These same policy considerations apply with equal force to a previously harmless dog kept at home.

Of course, it would be possible to require dogs to be confined in cages like wild animals, but that would completely frustrate the very purpose for which dogs are kept as pets. As the *Nava* court accurately put it, "[k]eeping a pet dog is undoubtedly one of the most cherished forms in which the constitutionally protected right to own personal property is exercised. To most people it is more than ownership of mere personal property. More than once courts have recognized that the keeping of such pets 'is such an important part of our way of life,' . . . and have recognized the perhaps sentimental but nonetheless universally strong affection of mankind for the dog. . . . The status of the dog as 'man's best friend' remains . . . . Unlike a grizzly bear, which is a wild and dangerous animal, the dog is a domesticated animal whose occasional presence in homes and neighborhoods is to be expected." (123 Cal.App.3d at p. 267, citations omitted.) For all of these policy reasons, it would be wholly inappropriate to impose liability for negligence on owners of peaceful dogs for failing to confine or constantly control them.

Since it is generally not foreseeable that a previously gentle and harmless dog will attack a human by jumping upon him, in order for the plaintiff to prevail in this case on a theory of negligence she was required either to establish that the dog's owners knew or should have known that the dog presented a particular risk of harm to persons visiting the owners' home because of its dangerous propensities, or that the defendants mishandled the

dog at the time of the incident. As the cited annotation recounts in the context of business owners, "[t]he drawback to proceeding on a negligence theory is that in order to prevail, the injured person must show that the business owner or operator knew or had reason to know that the animal presented a danger to the safety of his patrons." (Annot., Liability of Owner or Operator of Business Premises for Injury to Patron by Dog or Cat, *supra*, 67 A.L.R.4th 976, 988, citation omitted.) Thus, "if the animal appears to be harmless . . . , then the injured patron generally has no basis for recovery." (*Ibid.*) This is equally true outside of the business context and consequently the same rule applies to the owners of a dog kept at home.

Of course, if the owners know or should have known that their dog possessed a dangerous characteristic, propensity or abnormality, they would then be liable in negligence for their failure to use reasonable care to prevent this foreseeable harm. (See, e.g., *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 511-514 [118 Cal.Rptr. 741, 81 A.L.R.3d 628].) Indeed, most of the out-of-state cases relied upon by the majority are of this ilk.

These sister jurisdiction cases of negligence all involved dogs which would be classified as dangerous under California law. As the court correctly explained in *Williams* v. *Johnson* (Wyo. 1989) 781 P.2d 922, 923, "[t]he common law also provided that the owner of an animal which was not vicious or not known to be vicious, but which was prone to some other potentially harmful behavior could be held liable under a theory of negligence for any injury proximately caused by such behavior. In such cases the owner was only liable if, having knowledge of the particular propensities which created a foreseeable risk of harm, he failed to exercise reasonable care in his control of the animal. . . ." (See also *DeRobertis* v. *Randazzo* (1983) 92 N.J. 144 [462 A.2d 1260, 1267] ["owner of an abnormally dangerous dog owes a duty of care to an infant trespasser"]; *Arnold* v. *Laird* (1980) 94 Wn.2d 867 [621 P.2d 138, 141] ["only alleged negligence demonstrated by plaintiffs was confined to claimed deficiencies in maintenance and control which allegedly resulted in a dangerous animal"]; *Endresen* v. *Allen* (Wyo. 1978) 574 P.2d 1219 [dog with proclivity to escape from yard and chase cars, distracting motorists]; *Westberry* v. *Blackwell* (1978) 282 Ore. 129 [577 P.2d 75] [defendant knew dog had bitten plaintiff coming onto premises; question for jury whether defendant failed to use reasonable care to restrain dog as plaintiff left].)

Similarly, the owners would be liable in negligence if they carelessly mishandled the animal, whatever its character. (See, e.g., *Barnett* v. *La Mesa Post No. 282* (1940) 15 Cal.2d 191, 194-195 [99 P.2d 650]; *Talizin* v. *Oak Creek Riding Club, supra,* 176 Cal.App.2d at pp. 437-438; *Baley* v. *J. F.*

*Hink & Son* (1955) 133 Cal.App.2d 102, 108 [283 P.2d 349]; *Baugh* v. *Beatty* (1949) 91 Cal.App.2d 786, 790-791 [205 P.2d 671].)

This was the basis for the court's decision in *Ryman* v. *Alt* (Minn. 1978) 266 N.W.2d 504. The *Ryman* court held that the owner could be liable in negligence for mishandling its dog. "On several occasions, we have recognized a cause of action for injuries inflicted by a domestic animal based entirely upon the negligence of the animal's owner or keeper." (*Id.* at p. 508.) There, the owner held his Saint Bernard dog (which had bit the owner once), saying he had a good grip, and invited a child to pet the dog. The dog broke loose and attacked the child. "Plaintiffs here appropriately pleaded negligence. If their proof is adequate to show [the owner] was negligent, they may recover without showing viciousness of the dog and scienter. . . ." (*Ibid.*)

There is nothing extraordinary about imposing liability for negligence in mishandling animals. Thus, "[a] person may also be liable for negligence in handling an animal known to be dangerous[,] and may be liable for negligence in handling an animal that is not vicious, or, if vicious, is not known to be so." (*Talizin* v. *Oak Creek Riding Club, supra,* 176 Cal.App.2d at pp. 437-438, citations omitted.) But this case, like the *Talizin* case, did not involve mishandling of a domestic animal. At the time of the incident, defendants apparently were inside their home and were not handling the dog at all. As the *Talizin* court explained in a case involving a horse, "the negligence was not in the manner in which the animal was handled, but in permitting him to be jumped, at a public exhibition, even when ridden by a skilled rider. This can be negligence only if the defendants knew or should have known . . . that the horse had the dangerous propensity that it had." (*Ibid.*)

The only evidence about the dog's dangerous propensity in this case was that it jumped up on plaintiff with such force as to cause her to fall and, according to plaintiff's disputed version, the defendant admitted the dog "had a habit of jumping on people." Although this evidence was disputed, it was sufficient to establish a known, dangerous propensity and thus to entitle plaintiff to submit the case to the jury on a theory of negligence as well as strict liability.[4] Although negligence is a conceptually different theory than strict liability, in the case of docile dogs the two theories overlap in

---

[4]As we have noted, the majority draws an untenable distinction between dogs possessing vicious or dangerous propensities and those which otherwise pose a risk of harm to others. But as we have already seen, California treats any propensity of a dog which is likely to cause harm to people as a dangerous propensity. (*Talizin* v. *Oak Creek Riding Club, supra,* 176 Cal.App.2d at p. 435.) If, as the majority postulates, the jury might have found under the circumstances that defendants could have anticipated their dog would jump on visitors and

significant part. But here the trial court offered to present the case to the jury under the only theory of negligence established by the evidence, namely that defendants knew or should have known the dog had a habit of jumping on people and failed to take reasonable precautions to avert this foreseeable harm. The court thus offered to modify BAJI No. 3.10 (7th ed. 1986 bound vol.), the standard instruction defining negligence and ordinary care, by limiting its application to the situation where defendants knew or should have known of the dangerous tendency of the dog.[5] In my view, this proposed modification correctly reflected the law in California under the facts established by plaintiff. It is settled that "[t]he judge may modify a requested instruction to make it applicable to the case or to correct defects in content or form." (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 247, p. 252.) Plaintiff's refusal to accept a correct instruction waived any claim of instructional error.

Although plaintiff's counsel acknowledged that "the case law may say that you can't sue somebody unless there is a dangerous propensity," he nevertheless declined the court's offer, stating he thought it to be "bad law." As he saw it, "when people put dogs out in their front yard like that, they should know that whenever a stranger comes up, that dog is going to react, may do something." Summarizing his position, counsel put it this way: "I am saying the case law is probably against me; all right. But for purpose of appeal, if you rule against me, I want to say I think that a person that is injured by a dog that is negligently maintained, whether or not there is a dangerous propensity shown, should be able to sue. Okay? [¶] Now the case law may be against me on that, but we have evidence now that maintaining a dog in your front yard like that is—he's going to react to strangers, and I think that's negligence, and I think there should be liability for something like that."

This contention at trial that a dangerous propensity need not be shown was at odds with the way plaintiff pled her cause of action for negligence. She

---

knock them down, then the defendants were chargeable with knowledge of the dangerous propensity of the dog. Liability in negligence in this scenario would then flow from the owners' failure to take reasonable steps to prevent the forseeable harm from their dangerous dog. But the jury found that the dog was not dangerous and thus there was no basis for imposing a duty upon the owners.

[5]BAJI No. 3.10 reads: "Negligence is the doing of something which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under circumstances similar to those shown by the evidence. [¶] It is the failure to use ordinary or reasonable care. [¶] Ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence. [¶] [You will note that the person whose conduct we set up as a standard is not the extraordinarily cautious individual, nor the exceptionally skillful one, but a person of reasonable and ordinary prudence.]"

alleged that defendants "negligently . . . failed to maintain or control a certain large dog, which defendants, and each of them, knew, or in the exercise of reasonable diligence should have known, would and in fact did, attack and grievously injure persons, including but not limited to the plaintiff, . . ." In any event, counsel for plaintiff is mistaken when he implicitly asserts that it is foreseeable that dogs, regardless of their prior characteristics, will react to strangers coming on their owners' property in a dangerous and harmful way. This exaggerated claim, regrettably adopted by the majority, has no basis in law. Apparently, the majority labors under the misapprehension that the owners of a peaceful dog are liable in negligence if the animal causes some injury to a person and the owners could have prevented the harm had they confined or controlled the dog. Hence, if the dog runs up to greet the mailman and becomes entangled in the mailman's feet causing him to fall, the dog owners are liable because it is foreseeable that a dog might get under the feet of visitors. By a parity of reasoning, if the dog barks loudly, startling the visitor and causing a fall, the owners are liable once again because it is foreseeable that a dog will bark. This line of reasoning is wholly inconsistent with the Restatement and the previous law in California and ought to be rejected. The majority's mistaken view is "totally at odds with the present standards which strike a reasonable balance between the lawful enjoyment of pets by their owners and the personal security of others." (*Nava* v. *McMillan*, *supra*, 123 Cal.App.3d at p. 268.)

If plaintiff's theory of negligence did not rest upon a dangerous propensity, what did defendants' negligence consist of? As I have noted, ordinary dogs do not have to be confined or kept in constant control. Thus, the failure to confine or constantly control the dog in this case cannot add up to negligence because defendants were under no duty to do so. Of course, the owner would be liable in negligence if he "sees his dog . . . about to attack a human being . . . and does not exercise reasonable care to prevent it from doing so." (Rest.2d Torts, § 518, com. j.) But that is not this case.

So if the owners have no duty to confine or constantly control their dog, whence springs their liability for negligence? The majority says foreseeability but that cannot be the case because owners are not expected to foresee that their dogs will cause injury to people unless they have some reason to know the animal is dangerous. And the jury expressly found that the dog in this case was not dangerous. In a special verdict, the jury answered this question in the negative: "Did the dog, Bandit, have a particular vicious or dangerous propensity before August 5, 1987 [the date of the injury]?" Because of this negative answer, the jury was instructed that it need not answer the next question, "Did the [defendants] know or have reason to know of the particular vicious or dangerous propensity of the dog, Bandit?"

Owners, needless to say, cannot be chargeable with knowledge of a propensity that does not exist.

Because the jury found that the dog did not have any such dangerous propensity, there was no harm to foresee and the owners, in the words of the Restatement, were not "negligent in failing to prevent the harm." (Rest.2d Torts, § 518, subd. (b).) Thus, any conceivable error from failing to instruct on negligence was rendered harmless by the jury's special verdict.

I would therefore affirm the judgment.

Respondents' petition for review by the Supreme Court was denied July 22, 1993.